WAY
v.
LYON.

WAY and Another *v.* LYON.

A *voluntary* conveyance of real estate, though not recorded as prescribed by statute, is valid against any subsequent *voluntary* conveyance of the property executed by the grantor.

A purchaser of real estate at sheriff's sale obtains all the interest that the execution-debtor had in the property.

*Monday,*
*November 26.*

ERROR to the *Bartholomew* Circuit Court.

STEVENS, J.—This was a suit in chancery, and the material facts which it is necessary to notice, are these:—

In 1824 or 1825, one *Martin Way,* of *Bartholomew* county, in this state, an old man, was the legal owner of a small tract of land, situate, lying and being in the said county of *Bartholomew,* being the North half of the East half of the South East quarter of section number 3, township number 9 North, of range number 5 East; and, about that time, he, for natural love and affection, gave said tract of land to his son *Ira Way,* a man of lawful age, as an advancement, and conveyed the same to him by a deed in fee-simple, which deed is still in existence, not having been obliterated or destroyed, but the said deed has never been recorded.

Between the 10th day of *June,* 1827, and the 29th day of *January,* 1828, the said *Ira Way* became indebted to *James M'Camet & Co.* for merchandize in the sum of 25 dollars and 29 cents, for which he gave his note, &c., and judgment was rendered thereon against said *Ira Way* in favour of *M'Camet & Co.,* before a justice of the peace of said county, in the month of *May,* 1828. And the said *Ira Way* afterwards, and before the 16th day of *June,* 1828, became further indebted to the said *M'Camet & Co.* for other merchandize, in the sum of 3 dollars and 1½ cents, on which judgment was rendered before the same justice of the peace, in favour of said *M'Camet & Co.* against said *Ira Way,* on the said 16th day of *June.* After which, on the 21st day of *June,* 1828, transcripts of those judgments were filed and recorded in the office of the clerk of the Circuit Court of the county, and such proceedings were thereupon had, that the said *James M'Camet & Co.,* at the *September* term of said Circuit Court then next following, recovered a

judgment for execution against the lands and tenements of the said *Ira Way*. Executions were immediately issued, and the said tract of land seized and taken in execution as the land of the said *Ira Way*, and on the 4th day of *October*, 1828, was by the sheriff sold, and one *George Lyon*, the defendant in error, became the purchaser and received a deed from the sheriff for the same.

On the 12th day of *May*, 1828, before the said *M'Camet & Co.* obtained their first judgment against the said *Ira Way*, the said *Martin Way*, the father, finding, as he the said *Martin* says, that his son *Ira Way* was becoming very intemperate, and fearing that the benevolent intentions he had in view would be defeated, and finding that the deed of conveyance which he had made to his said son *Ira Way* had not been recorded, and believing that the deed for that reason was null and void, he, the said father, *Martin Way*, voluntarily, without any valuable consideration conveyed the said tract of land to his grandchildren, *Ira D. Way*, under the age of eleven years, and *Martin M. Way*, under the age of three years.

All the foregoing facts appear of record, and are confirmed or admitted by both parties.

The bill of complaint alleges, that *James M'Camet & Co.* gave credit to the said *Ira Way*, solely on the faith of his being the owner of said tract of land. This averment is not proved, nor is it admitted or denied by the answer. The bill also charges that the father, *Martin Way*, attempted to convey this land to his grandchildren as above stated, for the purpose of cheating and defrauding the said *James M'Camet & Co.* out of their claims against *Ira Way*, the son; but this charge is denied by the answer. The bill and answer contain many other matters and things, but we think they have no material bearing on the fundamental principles which govern the case, and therefore it is unnecessary to notice them. Those infants, the grandchildren and second grantees, claim the land under the deed made by their grandfather to them; and the defendant in error, *George Lyon*, who bought it at the sheriff's sale as the property of the said *Ira Way*, the son and first grantee, also claims it under his purchase and the deed of the sheriff.

This case presents to the Court for its consideration two general questions:—

First, was the first deed of conveyance made by *Martin*, the

father and grantor, to his son *Ira Way*, null, void, and of no effect, at the time the second deed of conveyance was made to the grandsons, by reason of its not having been recorded?

The laws respecting the conveyance of real estate in the several states are local, and are almost exclusively statutory. The statutes, however, on the subject of acknowledging and recording deeds of conveyance, are substantially the same in most of the states. They, in some instances, differ as to the time limited in which a deed shall be recorded, and, also, as to the officers before whom it may be acknowledged; but when once acknowledged before the proper officer, and recorded within the time limited, the effect is the same in most if not all of the states. In *New-Hampshire*, in the case of *Colby* v. *Kenniston*, 4 N. Hamp. 262, it is held, that he who takes a conveyance of land, knowing that another person has a previous conveyance by an unrecorded deed, is guilty of a fraud and cannot hold the land; and where the person who holds the unrecorded deed is in absolute and visible possession, such possession is notice to all the world, that he has such unrecorded deed. In *Massachusetts*, in the case of *Marshall* v. *Fisk*, 6 Mass. Rep. 24, it is decided, that a deed conveying land, but not acknowledged or recorded, transfers the estate to the grantee; and when an attachment is levied, it shall not be defeated by giving up such deed, and the original grantor's giving a new deed to a third person; it is a fraud upon the creditor. In the *United States*' Supreme Court, in the case of *Findlay et al.* v. *Hinde et ux.*, 1 Pet. Rep. 241, it seems to be settled that a deed of conveyance once properly made and delivered, will be good against, and will bind, the party making it, his heirs, and all other persons, except *bona fide* purchasers for a valuable consideration without notice, although it is neither acknowledged or recorded. The same principle is settled in *New-York* in the cases of *Jackson* v. *Sharp*, 9 Johns. R. 163, and *Jackson* v. *West*, 10 Johns. R. 466. By the statute of our state, a deed of conveyance, if made within the state, is valid and binding without either acknowledgment or record, between the grantor and grantee, and against all other persons, except purchasers for a valuable consideration, &c. Rev. Code, 1824, p. 333, sec. 8.—Rev. Code, 1831, p. 270, sec. 7. And such appears to be the statutory provisions in all the other states. 4 Kent's Comm. 448 (1).

The bill and answers are remarkably inaptly drawn, and are

defective as it respects possession and notice; but the second grantees being purely volunteers, and standing in this case on the same footing that volunteer strangers stand, being grand-children, and therefore the consideration of love and affection, as a meritorious consideration, can only in some particular cases be extended to them, and this not being such a case, it is immaterial who was in possession, or whether they are affected with notice or not. They cannot take any advantage of the first grantee, in consequence of his deed not having been recorded. The deed, as to that objection is good against all the world, except *bona fide* purchasers for a valuable consideration, or creditors of the grantor.

Secondly, can a grantor revoke his own voluntary deed of conveyance, by his own act for that purpose, so as to convey the same estate to an after voluntary grantee, by a second deed of conveyance?

In the state of *Ohio*, in the case of *Burgett* v. *Burgett*, 1 Ohio Rep. 478, it is considered as settled doctrine, that a voluntary conveyance is not void, but that it is good against all except creditors, or *bona fide* purchasers for a valuable consideration. In the case of *Randall* v. *Phillips et al.*, 3 Mason, 378, a voluntary conveyance is considered good and binding on parties and privies. In the case of *Bunn* v. *Winthrop*, 1 Johns. Ch. Rep. 329, it is said that a voluntary conveyance, though retained by the grantor in his possession until his death, is good and binding. The Court in the case of *Reichart* v. *Castator et al.*, 5 Binney, 109, says, that a deed made to defraud creditors is good against the grantor and his children. The Chancellor, in the case of *Souverbye* v. *Arden*, 1 Johns. Ch. Rep. 240, considers that a voluntary conveyance, fairly made, is always binding in equity upon the grantor; and, if he retain such deed in his possession, there must be other circumstances, besides the fact of his retaining it, to show that it was not intended to be absolute, or it will be binding. In the case of *Boughton* v. *Boughton*, 1 Atk. Rep. 625, the Lord Chancellor says, that a voluntary deed, kept by the grantor and never cancelled, will not be set aside by a will or an after voluntary conveyance.

In the case of *Villers* v. *Beaumont et al.*, 1 Vern. 100, the grantor, *William Beaumont*, a short time before his death, at an ale-house, voluntarily, on a little scrap of paper under his hand and seal, settled an estate upon his cousins. Afterwards, being

Nov. Term,
1832.

WAX
v.
LYON.

dissatisfied, he made his will in writing devising the same estate to his half-brother. The Lord Chancellor, at the hearing, said there was not even colour in the case. He said, if a man will improvidently make a voluntary deed, and not reserve in it a power of revocation, the Court will not loose the fetters he has voluntarily put upon himself; he must lie down under his own folly; for, if relief be granted in such cases, it will establish the absurd proposition, that a man can make no voluntary disposition of his estate but by will. In the case of *Bale* v. *Newton*, 1 Vern. 464, the testator made a voluntary conveyance of part of his estate, and afterwards made a will, by which he charged the same part of his estate with the payment of some debts. Upon the hearing the Chancellor said, the settlement, though voluntary, is not revocable, and therefore the grantor, by his voluntary conveyance, disabled himself to charge the estate. In the case of *Arundell* v. *Phillpot*, 2 Vern. 69, Mrs. *Phillpot* made a voluntary conveyance of her estate, and reserved in the deed a power of revocation, on the payment or tender of a guinea. Afterwards she became dissatisfied with the grantee, and conveyed the same estate to her eldest son, subject to the payment of some debts, but never paid or tendered the guinea to the first grantee. The counsel contended, that the first grant was revoked under the power retained in the deed for that purpose, and that although they could not prove the payment or tender of the guinea, yet that the making of the second deed was evidence of the revocation of the first. But that was not allowed. The first deed held the estate. In the case of *Clavering* v. *Clavering*, 2 Vern. 473, the grantor, in 1683, made a voluntary settlement of his estate, but he never published it to the world; he kept it himself, and it was found after his death among some old papers. In 1690, seven years after making the first settlement, he made another voluntary settlement, and settled the same estate on his eldest son. This last settlement he often spoke of during his life, but never was heard to speak of the first. He often told his tenants that, after his death, his eldest son was to be their landlord; yet the first conveyance held the estate.

The foregoing are a few only of the numerous cases in the books, which tend to the establishment of the same doctrine, but it is useless to travel over the whole of them. It perhaps may be correct to notice one other leading case;—that is the

case known in the books by the name of Lady *Burgh's Case,* reported in *Moore* and commented on by *Roberts.* In this case, Lady *Burgh* made a voluntary conveyance of her estate to a stranger, and, afterwards, she made a second voluntary conveyance of the same estate to a nephew, founded on natural love and affection, with the laudable design of providing for a family. The Chancellor sent the case to the judges for their opinion, and they decided that the first conveyance held the estate. They said a second attempt to convey the same estate, without absolute valuable consideration from a *bona fide* purchaser, was wholly abortive; there being no estate in the grantor to convey.

*Roberts, Maddock, Fonblanque,* and other law writers, lay it down as well settled, that voluntary conveyances are always binding on the party who makes them, his heirs, and all others, except creditors and *bona fide* purchasers for a valuable consideration; that neither the grantor, his heirs, or volunteers holding under him, can, by any act of theirs for that purpose, avoid such voluntary conveyance, they being as much bound by it as they would be, had the most valuable consideration been given, notwithstanding the deed or conveyance may have, for that purpose, been cancelled; that nothing less than *bona fide* purchasers for value, or creditors, can set aside and avoid a precedent voluntary deed; that a voluntary conveyance, without a reserved power of revocation, cannot be revoked, unless there is clear and decisive proof that the grantor never intended to deliver the deed; but that the simple fact of his retaining it in his possession until his death, is not of itself sufficient to prove that he did not intend it to be absolute; that equity never interferes with or aids adverse claimants, where there is no fraud, and all the parties are purely volunteers; and in all cases where equities are equal, Courts will not interfere; the legal title is suffered to remain where it is found; and in cases where persons claim under titles purely voluntary, if there is no fraud, the one holding under the eldest title has the estate at law, and will hold against the subsequent grantees, both at law and in equity (2).

In this case, *Lyon,* the defendant in error, stands in the shoes of *Ira Way,* the son and first grantee, and is clothed with all his right, title, claim, and demand, either in law or equity, to the land in question, and if the second grantees cannot defeat his claim, they cannot defeat the claim of *Lyon,* who holds under

11

Nov. Term,
1832.

him. The conveyance and title of the first grantee is not only the eldest, but also the most meritorious, it being the advancement of a father to a son; and therefore *Lyon*, who holds under this conveyance, will hold the estate both at law and in equity, against the grantor, his heirs, and all subsequent volunteers. Such is the decree of the Circuit Court, and that decree must be affirmed.

*Per Curiam.*—The decree is affirmed with costs.

*J. Whitcomb*, for the plaintiffs.

*P. Sweetser*, for the defendant.

(1) A subsequent purchaser, *with notice* of an unrecorded deed, cannot object to the prior deed on the ground of its not being recorded. *Ricks* v. *Doe*, Vol. 2, of these Rep. 346.

(2) In *England*, the law is settled by several modern decisions, that "a voluntary conveyance of land without valuable consideration, is fraudulent and void as against a subsequent purchaser, under the statute of 27 *Eliz.* c. 4, without any finding of a fraudulent intention, *and though he had notice of the prior conveyance.*" 2 Stark. Ev. 358.—1 Madd. 271.—2 Hov. 74. The Supreme Court of the *United States*, (*Baldwin*, J. dissenting,) have refused to go so far. The Chief Justice, after observing that the modern *English* decisions are as above stated, and that they ought not to be followed, says, "The universally received doctrine of that day, (time of the *American* revolution,) unquestionably went as far as this : A subsequent sale, *without notice*, by a person who had made a settlement not on valuable consideration, was presumptive evidence of fraud ; which threw on those claiming under such settlement, the burthen of proving that it was made *bona fide*. This principle, therefore, according to the uniform course of this Court, must be adopted in construing the statute of 27 *Elizabeth* as it applies to this case." *Cathcart et al.* v. *Robinson*, 5 Peters, 264, 280.