## TOOLE *v.* TOOLE *et al.*

1. Construing together sections 2778, 3530 and 3618 of the Civil Code, a voluntary deed, though duly recorded and taken without notice of a prior voluntary deed executed by the same grantor and not recorded, does not give to the second grantee a priority over the first. The preference given

by the section last cited is confined to deeds made upon a valuable consideration.

2. There was no error committed in admitting or in excluding evidence.

Argued February 16, — Decided May 29, 1899.

Equitable petition.    Before Judge Felton.    Bibb superior court.    April term, 1898.

The original petition against Lillian S. and James A. Toole alleged, in brief: The petitioners are the children of James A. Toole, and of his first wife, Eliza A.   In 1894 he executed a deed conveying certain land to himself as trustee for her during her life, with remainder in fee to her children born and to be born by his marriage with her, providing that if he should survive her he should be entitled to the rents and profits, use and occupancy of the property during his life.   She subsequently died, and he married defendant Lillian S., and executed deeds conveying the same property to Lillian S. without other consideration than love and affection.   The deed first mentioned was duly delivered at the time of its execution, and was thereafter kept among the papers of James A.   Lillian S. knew of this deed at the time the deeds to her were executed, and, as petitioners believe, destroyed it.   The land described therein is the property of the petitioners, and the deeds to Lillian S. are void and are a cloud upon their title.   Waiving discovery they pray that a copy attached to the petition be established in lieu of the original deed, that the deeds to Lillian S. be cancelled, that the title to the land be decreed to be in the petitioners, subject only to a life-estate in favor of said James A.; and for general relief.   Lillian S. Toole demurred, the grounds of demurrer relied on being that the petition failed to show title or possession in the petitioners, and they were therefore not entitled to maintain the action; and that the petition was insufficient for a proceeding to establish a lost deed, not having attached to it a sworn copy of the paper sought to be established, and no rule nisi having been issued calling upon the other parties to show cause why the paper should not be established.   The overruling of the demurrer was assigned as error.

By amendment the petitioners alleged, that Lillian S. Toole

was claiming the absolute title to the land in question, and their rights would be defeated if she should sell it to an innocent purchaser for value, without notice of their unrecorded deed; and they prayed that she be enjoined from selling or incumbering the land or otherwise using it in disregard of their rights, and that the remainder in fee after the death of their father be decreed to be vested in them, and the deeds to her be decreed to be void as against them.    This amendment was objected to, and its allowance assigned as error because it set up the only reason for equitable relief connected with the case, and sought to convert into a proceeding for injunction an action brought for the purpose of removing a cloud from title and establishing a lost deed.    James A. Toole answered, admitting the allegations of the petitioners, and joining in their prayers. Lillian S. Toole answered, denying the allegations as to the delivery of the first-mentioned deed, and as to her having destroyed it, or that she had knowledge of it when the subsequent deeds were executed.    At the trial one of the plaintiffs testified, that the deed a copy of which was sought to be established was given to him by his father after his father had signed it, and he (witness) put it with his father's other papers, the family papers.    There was no subscribing witness.    Nobody but himself was present when his father signed it.    His father did not tell him what disposition to make of it; he simply handed it to him (witness), and said nothing more that witness knew of.    Witness did not put it either in his own or his father's custody; it was among all the family papers. James A. Toole testified, that he meant to deliver the deed when he gave it to his son.    It remained in his (witness's) possession until his second marriage, and was afterwards destroyed.    Lillian S. Toole testified that she had no knowledge of the first deed before this suit was brought.

The court directed a verdict finding that the copy-deed be established; that the plaintiffs had, under the deed, a vested fee-simple estate in remainder in the land in dispute, subject to a life-estate reserved to James A. Toole; and that the deeds of James A. to Lillian S. Toole were voluntary, and, because of said prior deed, ineffectual to convey anything more than

his life-estate.    Lillian S. Toole made a motion for a new trial, to the overruling of which she excepted.    The motion contained, in addition to the general grounds, the following: (a) The court erred in refusing to allow movant to introduce in evidence a security-deed to a part of the land in dispute, signed by J. A. Toole, as grantor, to the Appleton Church Home, and dated and recorded in 1896.    It should have been allowed to go to the jury to illustrate the question of motive and delivery in issue in the case, it being contended by movant that the alleged deed from J. A. Toole to himself as trustee was never completed or delivered so as to become operative as title. (b) The court erred in not allowing movant to testify that J. A. Toole stated to her, with reference to the deed under which plaintiffs claim, "I started once to make a deed, but changed my mind, and I never finished or delivered the paper, and it is not worth the paper it is written on, and I request that you burn it up."    She had testified that while assisting him in "cleaning up" his papers, she came across one which she took to be an important paper, from the way in which it was folded, and she handed it to him with the remark that it seemed to be a valuable paper.    The court should have allowed her to give the whole conversation and conduct touching the matter testified about; and it should have been admitted for the purpose of illustrating the question of delivery, and of contradicting J. A. Toole's testimony that he meant to deliver the deed when he gave it to his son.    (c) The court erred in allowing J. A. Toole to testify that when he gave his son the deed under which the plaintiffs claimed, his purpose was to deliver it.    This testimony was admitted over the objection that it stated a conclusion, and that the meaning of the witness should be determined from his acts, and not from what he might testify as to his purpose and intention.

*Estes & Jones*, for plaintiff in error.
*Anderson, Anderson & Grace*, contra.

SIMMONS, C. J.    The deed made by Dr. Toole to his first wife and children, assuming that it was delivered, conveyed all the title and interest he had in the land, and was a good

and binding deed as between him and them, although it had but one witness and was unrecorded. *Howard* v. *Russell*, 104 *Ga.* 230. As he had thus parted with all title he had to this land, the voluntary deed which he subsequently made to his second wife conveyed no title to her, unless voluntary deeds, when in competition with each other, are governed by the provisions of the registry acts. If these acts are applicable to the present case, the law would put the title in the second grantee whose deed was recorded, on the ground that the grantees in the first deed failed to record their deed. All the authorities, however, which we have read on the subject, declare that the purpose of the registry acts, relatively to the question in hand, is to protect bona fide purchasers for value. None of them, as far as we can find, has ever held that they were designed to protect the holder of a junior voluntary deed, though the same be duly recorded. There are three sections of our Civil Code bearing upon this subject, as follows:

"§ 2778. Deeds, mortgages, and liens of all kinds, which are now required by law to be recorded in the office of the clerk of the superior court of each county within a specified time, shall, as against the interests of third parties acting in good faith and without notice, who may have acquired a transfer or lien binding the same property, take effect only from the time they are filed for record in the clerk's office.

"§ 3530. Every voluntary deed or conveyance made by any person shall be void as against subsequent bona fide purchaser for value, without notice of such voluntary conveyance.

"§ 3618. Every deed conveying lands shall be recorded in the office of the clerk of the superior court of the county where the land lies. The record may be made at any time, but such deed loses its priority over a subsequent recorded deed from the same vendor, taken without notice of the existence of the first."

It is contended by counsel for plaintiff in error, that these sections are broad enough to protect grantees under voluntary deeds, because two of them declare in substance that *all* deeds must be recorded. It will be observed, however, that in the latter part of section 3618, where it provides a penalty for failing to record the first deed, it is declared that "such deed loses

its priority over a subsequent recorded deed from the same *vendor*." The word "vendor" was evidently used with reference to a deed 'of bargain and sale, based upon a valuable consideration. If it had been intended to include voluntary deeds, the word "grantor," and not "vendor," would have been used. We are strengthened in this view by the phraseology of section 3530, which makes every voluntary deed void as against subsequent bona fide purchasers for value, without notice of the voluntary deed. The expression of one thing excludes the other, and limiting the beneficial purpose of this section to subsequent purchasers for value excludes grantees under a subsequent voluntary deed to the same property. Section 2778 does not conflict with this idea. While it is as broad as section 3618 as to recording every deed, it protects only third parties, acting in good faith and without notice, who may have *acquired* a transfer or lien binding the same property. This, in our opinion, means that this third party must have acquired the transfer or lien for value and without notice. This section was not dealing with voluntary deeds but left their status as it was at the time of the enactment of the statute from which this section has been codified. Construing all these sections together, we are of the opinion that they do not apply to a case involving a contest between two voluntary deeds, the older not recorded and the younger duly recorded. The holder of the latter does not occupy the position of a bona fide purchaser; and so far as we have been able to ascertain, this view is in harmony with all the text-books and decisions of this country. Webb, in his work on Record of Title, § 204, says: "The purchaser protected under the recording acts must be one who acquired his right for a valuable consideration. If he be a mere volunteer whose title has been derived by gift, inheritance, devise, or some kindred mode, he does not come within the term purchaser as used in these statutes." In 20 Am. & Eng. Enc. L. 590, it is said: "The recording acts were intended for the protection of those who should part with something of value, or suffer some loss, by reason of having acted upon the faith of a conveyance and in ignorance of some prior transaction which, in the absence of the operation of these provisions, would defeat the in-

tended acquisition of some new interest.    It is necessary that the subsequent purchaser, in order to be entitled to the protection of the recording acts, obtain his conveyance for a valuable consideration.    This would, of course, exclude a mere volunteer who takes by gift, devise, inheritance, etc., from the benefit of these statutes."    See also the cases cited.    Pomeroy, in his Equity Jurisprudence, vol. 2, § 747, says: "No person who has acquired title as a mere volunteer, whether by gift, devise, inheritance, post-nuptial settlement on wife or child, or otherwise, can thereby be a bona fide purchaser."    See also 4 Kent's Comm. (14th ed.) 549, * 456.    In the case of Way *v.* Lyon, 3 Blackf. 76, it was held by the Supreme Court of Indiana that " A voluntary conveyance of real estate, though not recorded as prescribed by statute, is valid against any subsequent *voluntary* conveyance of property executed by the grantor."    See to the same effect Snodgrass *v.* Ricketts, 13 Cal. 359.

There was uncontradicted evidence by one witness that the first deed was actually delivered.    This witness was not impeached, and no attempt was made to impeach him.    The grantor was introduced as a witness, and was allowed to testify, over objection, that when he gave this deed to his son he intended it as a delivery.    Under the ruling in the case of *Hale* v. *Robertson & Co.*, 100 *Ga.* 168, and the cases there cited, it would seem that this evidence was admissible.    But whether it was or not, one witness, as before stated, had testified positively that the deed was delivered.    Even if the evidence as to what the grantor said to his son was not admissible, we would not reverse the judgment on that point alone, especially as the question discussed in the first division of this opinion is, in view of the uncontradicted evidence above mentioned, controlling in this case.    The grantor's wife was introduced for the purpose of contradicting him as to his intention to deliver the deed, and it was proposed to prove by her certain conversations had between them as they were looking over his papers, when he said that the deed he made to his first wife and children was not worth the paper it was written on, and that he had never delivered it.    This evidence was clearly inadmissible, because it undertook to give a confidential conversation between hus-

band and wife. In the case of *Stanford* v. *Murphy*, 63 *Ga.* 411, this court held that "the wife is an incompetent witness for or against the husband in regard to any information derived from his confidence in her; and therefore she can not testify in respect to papers consigned to her care by her husband, and kept exclusively by her under her own lock and key." In the opinion, Jackson, J., said : "Any confidential communication from husband to wife may not be divulged in any court, for the reason that the fact communicated was disclosed in the privacy of the marital relation, and the peace of the household might be disturbed if it were divulged." See also Civil Code, § 5198, and cased cited.

The deed offered in evidence and rejected by the trial judge was irrelevant. Its rejection was not error.

*Judgment affirmed. All the Justices concurring.*