## 6002.   KAPLAN *et al. v.* COLLIER.

Where personal property is sold and delivered on condition that the title thereto is to remain in the vendor until the purchase-price shall have been paid, and the reservation of title is evidenced by a sufficient written contract, but the contract is not recorded within the time prescribed by the registration law, the vendor may nevertheless recover the property from one who has acquired it from the vendee by gift and for no valuable consideration, even though at the time of the gift the donee had no actual knowledge as to the vendor's title.

DECIDED JULY 30, 1915.

Trover; from municipal court of Macon—Judge Daly. September 11, 1914.

*Harris & Harris, M. J. Witman,* for plaintiffs.

*W. E. Martin Jr.,* for defendant.

WADE, J.   Where personal property is sold with the condition that the title thereto shall remain in the vendor until the purchase-price has been paid, the reservation of title must be evidenced in writing in order to be valid as against "third parties" (Civil Code, § 3318) ; and "Conditional bills of sale must be recorded within thirty days from their date, and in other respects shall be governed by the laws relating to the registration of mortgages." Civil Code, § 3319. Mortgages, "as against the interests of third parties acting in good faith and without notice, who may have *acquired* a transfer or lien binding the same property, take effect only from the time they are filed for record in the clerk's office." Civil Code, § 3320. It will be seen that section 3319, supra, provides that bills of sale shall be governed by the laws relating to the registration of mortgages.

In *Harvey* v. *Sanders,* 107 *Ga.* 740 (33 S. E. 713), the Supreme Court said: "The registry act of 1889 [which includes section 3320 of the Code of 1910] was intended not only for the protection of innocent creditors who might acquire liens or transfers of property of a defendant in fi. fa. to secure their debts, but also for the protection of bona fide purchasers for value who obtain title to such property by absolute deed;" and in *Toole* v. *Toole,* 107 *Ga.* 472-477 (33 S. E. 686), the Supreme Court said that the holder of a voluntary deed "does not occupy the position of a bona fide purchaser;" and the court quoted with approval from Webb on Record of Title, § 204, as follows: "The purchaser protected under the recording acts must be one who acquired his right for a valuable

consideration. If he be a mere volunteer whose title has been derived by gift, inheritance, devise, or some kindred mode, he does not come within the term purchaser as used in these statutes." In *Finch* v. *Woods,* 113 *Ga.* 996 (39 S. E. 418), the Supreme Court said that "the registry laws were not intended for the protection of those who claim under voluntary conveyances." See also *Martin* v. *White,* 115 *Ga.* 866 (42 S. E. 279). This court held in *Tremere* v. *Barfield,* 12 *Ga. App.* 774 (78 S. E. 729), that "where personal property is sold, with the condition affixed to the sale that the title is to remain in the vendor until the purchase-money is paid, the reservation of title must be in writing and recorded within thirty days from the date of its execution, in order to be valid against a third person who, without actual notice of the reservation of title, parts with money or other thing of value upon the faith of the vendee's apparent unconditional ownership of the property, and in consideration therefor receives from the vendee a bill of sale to the property to secure the debt, and records it in the manner prescribed by law. One who, in consideration of the execution of such a bill of sale, surrenders to the vendee a valid mortgage on other property, and cancels the debt evidenced thereby, is a third person, within the meaning of section 3318 of the Civil Code." And in the same case the court said: "Section 3319 provides: 'Conditional bills of sale must be recorded within thirty days from their date, and in other respects shall be governed by the laws relating to the registration of mortgages.' Hence a seller of personal property, who reserves title in writing until the purchase-money has been paid, but who fails to properly record the reservation of title, loses his right to enforce his reservation of title against third persons who in good faith part with money or other thing of value upon the faith of the apparent unconditional ownership of the property by the vendee, and without actual or constructive notice of the vendor's reservation of title. As to all such persons, the vendee is to be treated as having the absolute unconditional title to the property; but as between the parties themselves and persons who have notice the reservation of title is good whether recorded or not. *Hill* v. *Ludden,* 113 *Ga.* 320 (38 S. E. 752). In order, however, for third persons to acquire priority over a vendor who has failed to record his reservation of title, it must appear that such person has parted with something of value on the faith of the vendee's appar-

ent ownership of the property." See also *Reisman* v. *Wester,* 10 *Ga. App.* 96 (72 S. E. 942), where a vendor who failed to record his reservation of title suffered because credit had been extended to a donee of the vendee on the faith of his apparent ownership of the property sold to her husband. Again, this court held in *Phillips & Crew Co.* v. *Drake,* 13 *Ga. App.* 764 (79 S. E. 952), that where one sold property under a contract of conditional sale and delivered it over into possession of the vendee without recording the contract, he took the risk of the acquisition of a judgment lien against the property by other creditors of the defendant. The court said: "The owner of personal property sold on conditional sale can not withhold the contract from record, and then enforce the reservation of title against one who subsequently obtains a lien at a time when the defendant is apparently clothed with the absolute title to the property."

Construing these several decisions together, and many others of like import, it may be concluded that where the owner of personal property sells it on conditional sale and withholds the contract from record, he would be unable, as against one who obtains a lien or a transfer for value at a time when the vendee is apparently clothed with the absolute title to the property, to enforce any rights under his retention-of-title contract; but where the person in possession of the property, the title to which is reserved by the vendor, acquires the property merely by gift or for no valuable consideration, the vendor may still assert his rights as against the holder, notwithstanding his failure to comply with the registration laws. In other words, the "third parties" protected by the proper execution and registration of a retention-of-title contract are not those whose title has been acquired by gift and who have parted with no valuable consideration therefor.

The facts disclosed by the record in this case were as follows: H. D. Kaplan and Henry Kaplan, the plaintiffs, sold and delivered to Charles Collier, the husband of the defendant, two diamond earrings on September 20, 1912, for $265, for which Collier gave them on that date a note due after date, reserving title in the vendors, which was filed for record in the office of the clerk of Bibb superior court on October 14, 1912, and recorded on the following day. On October 9, 1912, the plaintiffs, having heard nothing from Charles Collier and having received no payment from him,

went to his house and found him sitting on the porch with his wife. H. D. Kaplan testified, that he went on the porch with the note in his hand and said to Charles Collier, "Well, what are you going to do about the earrings?" and that Collier "turned to his wife and asked her what he should do about it—whether he should keep them or not. His wife said, 'Well, suit yourself—keep them if you want to.' He stated for me to call around the next day and he would make a payment. The defendant in this case [the wife] was sitting next to Charles Collier, within four or five feet from me. We left, and on the next day he made a payment of $25. He made regular payments on the earrings up to August 25, 1913, which is the date of his last payment to me." This witness further testified that in May, 1914, he went to see Mrs. Collier and inquired what she intended to do about the earrings, informing her that Charles Collier had failed to make the payments, 'and "that she also was not making regular payments. She had made two or three payments since Collier made his last payment on August 25, 1913." The defendant replied that her husband had left her without any money and she was unable to make any payments just then, that she knew that there was a balance due on the earrings, and she would pay something every month. The witness told the defendant to see his attorneys and make some arrangement with them, but this she failed to do. Henry Kaplan identified the earrings obtained by the sheriff from the defendant, as the earrings delivered to Charles Collier on September 20, 1912, and described in the retention-of-title note, signed by Collier on that date, which was introduced in evidence. His testimony was in accord with that of H. D. Kaplan as to the conversation between H. D. Kaplan and Charles Collier and the defendant on October 9, 1912; and he added that in the early part of 1914, the defendant herself came to his store and stated to him that her husband was in trouble and that he (the witness) then warned her not to sell the diamond earrings belonging to himself and H. D. Kaplan, since the full purchase-price had not been paid, and she admitted that she knew the earrings had not been paid for, and indicated her intention not to sell them. Another witness testified that he made three collections for the plaintiffs from the defendant on the diamond earrings in controversy (on December 6, 1913, $5; December 15, 1913, $6; February 5, 1914, $2), and that these amounts were paid to him for the plain-

tiffs by the defendant in person. It was admitted that the earrings sued for were in the possession of the defendant at the time suit was instituted, and it was further admitted that before suit the plaintiffs demanded of her the return of the earrings, and that she refused to return them. The defendant herself testified, that in the early part of September, 1912, her husband, Charles Collier, gave the earrings to her as a present, and that she knew nothing of any claim in favor of the plaintiffs for the purchase-money of the earrings until H. D. Kaplan spoke to her about them in May, 1914. She testified that the only conversation with H. D. Kaplan on the porch at her home, that she recalled, was that H. D. Kaplan asked her husband to make him a payment on the earrings, and that her husband told Kaplan to come to his place of business on the following day and he would do so. She denied that she ever told Henry Kaplan in his store that she knew the diamond earrings had not been paid for, and that she would not sell them. She testified that she made only one payment on them; that this payment was made some time in February, 1914; that Charles Collier left the money with her for this payment, but that she did not know what the payment was for. She further testified that she and Charles Collier were not then living together, having separated in April, 1914. This was the entire evidence. On motion of the defendant's counsel the court directed a verdict in her favor; whereupon the plaintiffs brought the case to this court for review.

The court erred in directing a verdict in favor of the defendant. On the evidence submitted a verdict might, without error, have been directed in behalf of the plaintiffs. Collier could not convey by gift any better title than he himself possessed, and, under the provisions of the note introduced in evidence, he had no title to the earrings at the time he delivered them to his wife as a gift. The fact that the vendors failed to record their retention-of-title contract would of course have destroyed their rights under the contract so far as recovery of the property described therein might be concerned, if Charles Collier had pledged the earrings as security for a loan, or had mortgaged them, or had effected a sale or transfer of the property, to some third person ignorant of the fact that the title to the property was not in him. As indicated by numerous rulings of the Supreme Court and of this court, the purpose of the registration act, including the provision requiring the

record of a conditional bill of sale, is to protect those who acquire liens on the property or a transfer of the title thereto for a valuable consideration; and certainly where one acquires possession of personal property by gift only, the donee, having parted with nothing of value in order to acquire the property, can not rely upon the registration laws in order to defeat the title of the vendor. Mrs. Collier did not contend that she was a purchaser for value or had parted with anything of value to acquire the property sued for. It was clearly established that the property in question had been purchased from the plaintiffs by her husband under a retention-of-title contract, and that a balance yet remained unpaid of the purchase-money. Under these facts, since Mrs. Collier was not one of the "third parties" protected by the registration law, what claim of title could she in equity and good conscience maintain against the plaintiffs, who made the conditional sale to her husband and who were yet unpaid? Failure to record a conditional bill of sale results in the loss of the vendor's rights in the property only where because of his negligence in this respect some innocent person, or a person without either actual or constructive legal notice, in good faith obtains for a valuable consideration, a transfer or lien on the same property; and this loss falls on the vendor by way of a penalty for his negligence, and as a matter of wise public policy, in conformity with the practical and equitable rule that where one of two innocent persons must suffer, the loss should fall upon that one whose negligence made such a loss possible. Civil Code, § 4537. Mrs. Collier was not an innocent purchaser, and did not obtain for a valuable consideration a transfer or lien binding the property sold by the plaintiffs to her husband.

It is unnecessary to discuss the legal effect of a sale from husband and wife, since nothing of that sort appears in this case. As between the parties to the contract, the reservation of title would be good though unrecorded, and no reason exists why one obtaining the property from the vendee by gift should not occupy precisely the same position that the vendee himself would occupy.

*Judgment reversed.*

RUSSELL, C. J., concurring specially. I agree that the judgment of the lower court in directing a verdict should be reversed, but I do not concur in all that is said in the opinion of the majority of the court. It appears to me that the bona fides of the gift from

Collier to his wife is unquestioned. It is likewise undisputed that the unconditional bill of sale was not recorded within the thirty days prescribed by law. The case in my opinion is not altogether dissimilar to that of *Reisman* v. *Wester* (supra), in which this court held that a piano which had been sold upon the installment plan and the title to which had been reserved by Wester was subject to the lien of a judgment obtained against Mrs. Taylor, whose only title had been acquired by gift from her husband, the purchaser under an unrecorded reservation of title. It is true that the decision in that case is based partly upon the fact that Wester, by failing to record his reservation of title, placed it in the power of Mrs. Taylor to obtain credit from Reisman, but the principle that a wife may by gift acquire title from her husband, and that the original vendor may part with his title (making the sale in effect merely a sale upon account) by failing to record his reservation of title within time, was clearly recognized. As said by the Supreme Court in the case of *Southern Iron &c. Co.* v. *Voyles,* 138 *Ga.* 258, 262 (75 S. E. 248, 41 L. R. A. (N. S.) 375, 29 Ann. Cas. (1913D) 369), "when one undertakes to circumvent the rights of others by the assertion of a superior right accruing solely from a compliance with a statute, he must show full and complete compliance with the statute." The vendor in the present case was apprized by the nature of the articles purchased that they were probably intended for a gift, and this affords an additional reason why the vendors should have been prompt in having the contract of conditional sale put to record if they intended to reserve title. One who sells diamond earrings to a man who is not engaged in the sale of jewelry must naturally infer that they are purchased with the idea of giving them to some one. That this fact is judicially of some significance is recognized in Re Priegle Paint Co., 175 Fed. 586, 587, and in Re Garcewich, 115 Fed. 87-89 (53 C. C. A. 510). In my opinion the plaintiffs were charged with notice that the earrings were purchased by Collier to be given to his wife or some other woman; and this was wholly inconsistent with the reservation of title in the vendors unless they promptly complied with the strict letter of the law with reference to the recording of the reservation of title.