No. 11.—JOSEPH C. BEVERLY and WILLIAM McBRIDE, plaintiffs in error, *vs.* JOHN BURKE, defendant in error.

[1.] A Sheriff's deed, though defective, may be proper testimony, as *color of title*, in aid of possession.

[2.] The testimony of a witness, executed by commission, going to show when a bond for titles was taken, that the purchase money had not been paid, is proper evidence upon a trial where the bond is relied upon, as color of title, as between vendor and vendee; for in such case, the bond cannot so operate, when the purchase money is not paid.

[3.] Where a person acting " as agent generally to take interrogatories in a case", was present at the execution of a commission, though he took no part in it: *Held*, that his presence rendered the proceeding invalid, and the testimony should be rejected: *Held*, also, that such testimony is precluded by the rule *that there must be no circumstances of unfair advantage obtained by one party over the other, in having testimony taken by deposition.*

[4.] It is not error for the Court to say in the hearing of the jury, that the declaration of a tenant, that he did not hold under one claiming to be his landlord, in the absence of that person, and without his knowledge, was "the weakest sort of testimony", when there was proof of a contract between them as to the tenancy.

Ejectment in Fayette Superior Court. Tried before Judge HILL, March Term, 1853.

This was an action brought by John Burke, to recover a portion of a lot of land, lying partly in Fayette county, and partly in Campbell. The portion in Fayette was in dispute in this case. The plaintiff relied on color of title, and adverse possession.

A Sheriff's deed, from the Sheriff of Campbell county, was introduced, conveying the whole lot, which, as above stated, lay partly in Fayette. This was objected to by the defendant, as being void as to the land in Fayette, which was now in dispute. The Court admitted the deed in evidence, as *color of title.*— Plaintiff then introduced a bond for titles, made by Henry Reeves, the original grantee of the lot in question, to one Thomas Steel. This bond was dated Nov. 3, 1830, and was assigned by Thomas Steel to the plaintiff, Sept. 24, 1833. It appeared in testimony, that Steel had remained in possession

from the time the bond was given, until its assignment to the plaintiff; after which, it had passed through several hands—and the testimony was conflicting, as whether some of these successive tenants held under the plaintiff or not.

The defendant, among other testimony, offered a set of interrogatories, and the answers of Thomas Steel, showing that the purchase money of the lot had never been paid, as required in the bond for titles, given to him by the grantee.

This testimony was rejected by the Court, on the ground that the fact of the purchase money not being paid, did not affect the character of the bond as *color of title*. The testimony of Jesse Gilbert, taken by interrogatories, was offered by the defendant, and was rejected by the Court, because Joshua W. Wood, a person employed by the defendant, as his general agent to have interrogatories executed in this case, was present at the taking of them.

When evidence of the declarations of tenants in possession of the land, as to whom they held under, was offered by defendant and objected to, it was admitted, but the Court remarked, that "it was the weakest kind of testimony, when an agreement was proved". When the testimony was concluded, the defendant requested the Court, among other things, to charge the jury, that a tenant, in speaking of his tenancy, is bound to declare under whom he holds; and that a party cannot set up adverse possession through a tenant, if the tenant declares that he holds under another. This charge the Court refused to give, but charged that a tenant is not bound to tell all who may question him, under whom he holds; and that the declarations of a tenant in the absence of his landlord, and without notice to him, is weak testimony.

The jury found for plaintiff, and the defendant excepts to the several rulings and charges of the Court, above stated.

EZZARD & MOON, for plaintiff in error.

TIDWELL & FULLER, for defendant.

*By the Court.*—STARNES J. delivering the opinion.

[1.] It is the opinion of this Court, that there was no error in the admission of the deed from the Sheriff of Campbell county, to the tract of land lying in Fayette county. An instrument such as this is alleged to be, is admitted, though defective, in aid of possession, because it is looked to as a sort of definition of the limits and extent of the claim by possession. Such purpose it serves, though not perfect title ; but only a sign, semblance, or color of title. In this point of view, it was proper testimony in this case.

This very question, however, raised upon the admission as evidence of this same instrument, was settled when this case was previously before the Court. (See *Beverly & McBride vs. Burke,* 9 *Geo. R.* 443) and we are somewhat surprised that it should be again presented.

[2.] The second and fifth assignments of error may be considered together. They are substantially, that the Court committed error in ruling out the testimony (taken by commission) of Thomas Steel, going to show that the purchase money for the land in question, which was held under a bond for titles, was not paid ; and in refusing to charge that a possession by a vendee under such a bond, when the purchase money was not paid, did not constitute adverse possession.

John Burke, in this action, was seeking a recovery by virtue of his statutory title (as we denominate it in Georgia) and in proof of it, he offered in evidence a bond for titles from Henry Reeves to Thomas Steel, dated on the 3d of November, 1830. That bond, according to the record, was assigned by Steel to Burke on the 24th of September, 1833. Adverse possession in Steel, from the time of the execution of the bond in his favor, was relied upon by Burke ; to which possession he sought to tack his own. Now, if it be true, that a bond for titles where the purchase money has not been paid, does not operate as color of title, then it is obvious that if Thomas Steel could have proved that the purchase money was not paid by him, his testimony was proper.

In the case of *Fain vs. Gathright* 5 *Geo.* 6, *R.* this Court held, that a bond for titles would operate as color of title in

aid of possession, although the purchase money was not paid; but in that case, the question was not between vendor and vendee; and to this circumstance the Court called attention in its opinion. In the later case of *Stamper et al. vs. Griffin*, 12 *Geo. R.*, 450, it is expressly held (whilst the Court affirms the case of *Fain & Gathright* as between the vendee and a stranger) that as between vendor and vendee such a bond would not operate as color of title, where the purchase money was not paid. This decision we affirm for the reason there given, viz: that under such an instrument, the *quasi* relation of landlord and tenant continued to exist until the purchase money is paid. (*Adams on Ejec.* 57.)

In this point of view, the testimony of Thomas Steel would have been proper, to show that the purchase money in the case at bar had not been paid; and it was error in the Court to exclude it.

When we first took this point into consideration, it escaped our attention that the bond for titles from Reeves to Steel was relied upon as color of title in aid of the possession of Burke or of Steel, under whom he claimed, from November, 1830, until June, 1833, that it was a material feature of testimony, and as such, may have been considered by the jury.

We were then inclined to consider the case as between the vendee, Burke, and third persons; that is to say, Baughn's feoffees: but on being reminded of the above fact, we are constrained to hold, that during the time Reeves retained the title in himself, up to the period when he conveyed to Baughn, viz: in June, 1833, (the purchase money not being paid) the possession of Steel was not adverse to Reeves, and could not properly have been regarded by the jury as such; if Steel's testimony had been admitted, and had shown that such purchase money had not been paid.

It follows from what I have just said, that if there had been any testimony to show that the purchase money had not been paid by Steel, the refusal of the Court to charge that in such event the bond for titles to him did not operate as color of title,

would have been wrong. If such testimony had been before the jury, the charge should have been thus given.

[3.] The objection to Gilbert's testimony was in our opinion well taken and properly sustained. It appears by the record, that Joshua W. Wood was acting for the defendant "as agent generally to take interrogatories in this case", and that he was present at the taking of Gilbert's testimony by commission.— This was improper. In the argument, it was admitted as well as settled, that an attorney for a party in a cause, or any one connected in interest with him, should not act as commissioner in the taking of depositions. But it was insisted that the decision went no farther, and that there was no rule which prohibited an agent like Wood from being present; and no decision of this Court to this effect. We were then asked not to stretch our decision to suit the circumstances of the particular case, and thus create a rule.

In deciding as we do, we establish no new rule. We hold, that the case presented to us, falls within a rule already well settled; and that rule simply is, *that there must be no circumstances of unfair advantage obtained by one party over the other, in having testimony taken by depositions.* This is the general rule.

It appears, so long ago as *Peacock's case, (Coke's R.* 271, 9 *Jac.)* that it was considered a great misdemeanor, for the commissioner, during the examination of the witness, Peacock, to hold consultation with the plaintiff, who was in another room.

Many modern cases may be found, in which it has been held, that such depositions should always be taken *in good faith.* I content myself with referring to but one. In Bean *vs.* Quimby 5 *N. Hamp. R.* 98, the Court says, "the invariable rule by which this Court is governed, in the admission of depositions, is not to receive any which have not been taken fairly, and with the utmost good faith", &c.

In the case of Glanton *vs.* Griggs, 5 *Geo. R.* 429, referring to the taking of testimony by deposition, and to the fact that it "is at best but a very imperfect way of arriving at the

truth", this Court says, that "every precaution should therefore be taken to guard against abuses."

If an agent, interested for a party to a suit, and engaged in the very act of getting up testimony for him, is allowed to be present at the execution of a commission, when no one representing the other side is present, it is very plain that an unfair advantage is obtained by the one party over the other. Even though the agent make no suggestion to the commissioners, nor assists in the examination, still he hears the testimony; can carry with him to his principal, a statement of what is sworn, and thus give the advantage of knowing what is thus sworn immediately to his principal, while the other party cannot procure the information until Court is in session. This would, without doubt, be an unfair advantage, and should not be permitted.

Taking a similar view, we find the Court in the early case to which reference is above made, holding "that a commissioner, before publication of the depositions, ought not to discover to any of the parties, the matter thereof." In the reign of the first George, an act of Parliament was passed, making it penal for a commissioner who took depositions in Chancery, thus to divulge the testimony.

In addition, it may be mentioned, as a circumstance of probable unfair advantage, that the presence of a party to a suit, or his agent, the opposite party not being present or represented, at the taking of a witness's testimony, might operate upon and influence the witness, so as to cause an inclination of his testimony favorable to the party thus present, by himself or agent.

The Court was therefore right in excluding these depositions.

[4.] Neither do we find error in the remark of the Court, when admitting the sayings of the tenant Diskin Holcom, to the effect that he did not hold under Burke, that this was "the weakest sort of testimony."

Standing as an isolated remark, as it is presented by the plaintiff in error, it would seem objectionable; but modified by what was said in connection with it, as shown by the record, the difficulty is removed. According to this record, as amend-

ed by the Court, His Honor Judge *Hill*, after considering the propriety of admitting this testimony, remarked that he would let it go ; but that when there were agreements as to the tenancy positively proven, this was the weakest sort of testimony.—Afterwards, when charging the jury, according to the record, he explained his meaning, and told them that "sayings of a tenant against his landlord, and in his absence, when compared with their contract" (doubtless meaning if there was positive proof of a contract between them) "were entitled to very little weight."

The Judge might very well, without error, have gone so far as to decide that such sayings, under such circumstances, were entitled to no weight whatever, and need not be regarded as testimony ; and therefore, taking his remarks and charge in this connection, as the whole record presents them, we cannot hold that they were erroneous.

The Court was also requested to charge "that when possession was held by a tenant, that when he spoke of his tenancy, he must tell under whom he held ; and that if holding under one, he declared he was holding under another, this could not constitute an adverse possession."

In our opinion, the Court properly declined to give this very vague and inaccurate request in charge to the jury, and committed no error in so doing; especially, as by taking the whole charge together, we find the Court charging the Law in this connection with sufficient correctness.

Let the judgment be reversed on the second assignment of error.