No. 64.—JOHN BURKHALTER, plaintiff in error, *vs.* WILLIAM H. EDWARDS, defendant.

[1.] A party cannot discredit his own witness—he may show, however, that the fact is different from what the witness has stated.

[2.] A Sheriff's deed is admissible in evidence as *color of title*, although unaccompanied by the execution under which the property was sold.

[3.] A person having the paramount title to land, who not only acquiesces in the sale of it, as the property of another, but encourages the same, is estopped from afterwards asserting his legal title against a purchaser, whether by making it satisfactorily to appear that he was ignorant that the land was included in his grant, and making compensation for the injury he has occasioned by his mistake.   *Quere?*

[4.] If the real owner encourages another to grant a part of his land as vacant, and to occupy it for seven years or more, by cutting timber, trees and ash-wood, all the time claiming it as his own, it constitutes such a possession as will mature into a statutory title, as against the plaintiff himself.

[5.] Lands may be twice granted for many practical purposes.

Ejectment, in Tatnall Superior Court.   Tried before Judge HOLT, October Term, 1854.

The facts of this case are as follows: In 1816, a grant was issued by the State to William Wilder, for seven thousand acres of land in the County of Tatnall.   In 1823, Wilder conveyed the land to Ebenezer Jenks, and in 1833, Jenks conveyed to William H. Edwards, the defendant in error.   In 1838, Edwards being engaged, at the time, in litigation, con-

cerning the purchase-money of the land, instituted proceedings to have a portion of the tract run up as vacant land.

At the same time, one John H. Smith was proceeding to secure the same portion in the same manner. Smith told Edwards that he (Smith) had the oldest survey; upon which Edwards offered, if Smith would pay him the expenses incurred by him in the matter, to withdraw his application, which Smith did; and obtained a grant for the land and went into possession. In 1845, Edwards, controlling a *fi. fa.* against Smith, pointed out this land as his, and caused it to be levied on and sold by the Sheriff, he present at the sale and making no objection.

Benjamin Brewton and John A. Mattox became the purchasers, and in 1847 Mattox conveyed his interest to Brewton; Edwards being a witness to the deed. In 1850, Brewton conveyed to Burkhalter, the plaintiff in error, and the land continued, from that time until now, in the possession of Burkhalter.

In 1852, Edwards brought his action of ejectment against Burkhalter for the land, founding his claim upon the original grant to Wilder, and the chain of title to himself, which was proved to cover the land.

Upon the trial, the following points arose: When the grant to Smith was offered in evidence, by defendant, being objected to, the Court refused to admit it for any other purpose but to show color of title, holding that land cannot be twice granted, and that, as a grant, it was of no force, to which defendant excepted.

The defendant offered the Sheriff's deed, without the *fi. fa.* on which it was founded; and proved by the former Sheriff who had sold the land, and by the present Deputy Sheriff, that they knew nothing of the *fi. fa.;* the Deputy Sheriff stating that he had but one *fi. fa.* of the Central Bank against John H. Smith, and on that there was no entry whatever.

Col. W. B. Gaulden, of Counsel for defendant, was offered to prove that he had applied to the Deputy Sheriff for the *fi. fa.* and was told by him that there was no such *fi. fa.* in office. This evidence the Court rejected, on the ground that defendant

should not contradict his own witness; and decided that the loss of the *fi. fa.* was not satisfactorily shown, and rejected the Sheriff's deed, and defendant excepted.

Defendant then offered the deed as color of title, *under the Document Act,* and at the same time offered to prove that Edwards was present at the sale, and made no objection to it, and no mention of his own title, and that he had pointed out the land to the Sheriff, to be levied on as Smith's property. All which was rejected by the Court, except the fact of the sale; and to this decision defendant excepts.

Defendant also excepted, because the Court refused to charge that if, at the time Edwards bought the land, it was in the possession of another under adverse claim, that the purchase was void under the Statute of *Henry VIIIth* against buying pretended titles; and also, that Court did charge that the act of cutting timber on the land did not constitute adverse possession, and that land could not be twice granted by the State.

Upon the above stated points, error is assigned.

GAULDEN, for plaintiff in error.

D'LYON & SCHLEY, for defendant.

*By the Court.*—LUMPKIN, J. delivering the opinion.

It is not advisable, we apprehend, to enter minutely into the consideration of all the points, in detail, which are spread out upon this record. It would involve unnecessary repetition. Having expressed the opinion of the Court, upon the main questions which must control the present and future disposition to be made of this case, we shall have discharged our duty.

[1.] Was the Court right in rejecting the testimony of Wm. B. Gaulden, Esquire, the Attorney of the defendant, and who tendered himself as a witness, to prove that he applied to the Deputy Sheriff for the *fi. fa.* under which the land in dispute was sold? The evidence was repelled by the Court, on the

ground that the defendant could not contradict his own witness. It is not apparent, from the record, how the testimony of Col. Gaulden would gainsay any thing stated by the Deputy Sheriff. It is alleged in the argument, however, and acquiesced in, seemingly, by the other side, that the interrogatory had been previously propounded to the Deputy Sheriff, whether Col. Gaulden had not applied to him for this paper; and that he had answered in the negative.

Admitting this to be so, was it not competent to establish, by Counsel, that such was the fact? And would this be any disturbance of the rule which will not allow a party to discredit his own witness? Whatever diversity of opinion may have existed upon this question, we consider it as settled, both upon reason and authority, in the affirmative. A party is not to be sacrificed by his witness; and he ought not to be entrapped by the arts of a designing man, perhaps in the interest of his adversary. He ought, therefore, to be permitted to relieve himself from the effect of testimony which has taken him by surprise, not by showing that the witness, from his general character for truth, is not entitled to credit, but by showing that the fact is different. (*Wright vs. Beckett,* 1 *M. & Rob.* 414, 416, *per Lord Denman;* 1 *Phil. & Am. on Ev.* 904, 907; *Rice vs. New Eng. Marine Ins. Co.* 4 *Pick.* 439; *Rex vs. Oldroyd, Rus. & Ry.* 88, 90, *per Lord Ellenborough, and Mansfield, C. J.; Brown vs. Bellows,* 4 *Pick.* 179; *The State vs. Norris,* 1 *Hayw.* 437, 438.)

[2.] Ought the Sheriff's deed to the land, unaccompanied by the execution under which the sale was effected, to have been admitted *as color of title?* We think so, most clearly. Conceding that the Sheriff sold without authority, and this is the most that can be presumed from the absence of the *fi. fa.;* and that consequently, his conveyance was void; still, if the purchaser took and held possession under the deed, it was good *as color of title.* The presiding Judge recognized this rule, in relation to the grant to Wm. H. Smith; for while he held that that grant was void, the same land having been previously granted, by the State, to Wm. Wilder; still, he allowed it to

go to the Jury *as color of title.* And this error, in rejecting the Sheriff's deed, *as color of title,* was fundamental; for without this deed and the possession under it, the defendant's statutory or possessory title was confessedly incomplete. With it, the Jury were authorized to find that the bar to the action was conclusive.

[3.] Another material exception in this case is, the repudiation, by the Court, of all the acts and declarations of Wm. H. Edwards, which the defendant proposed to set up, as amounting to an estoppel to his assertion of title to the premises in controversy, to-wit: the pointing out of the land to be levied on as the property of Smith, being actually present at the sale and interposing no claim or objection, and his subsequent attestation of a deed from Mattox to Brewton, to the same land, &c. All the proof, to this point, should have been received, for it demonstrates that Mr. Edwards not merely tacitly acquiesced in Smith's title, but encouraged others to buy under it. Mr. Justice *Lawrence,* in 6 *Den. & East.* 556, stated that Lord *Mansfield* had held, that similar circumstances amounted to a good estoppel, *at Law.* And if they would so operate in England, much more would they, in this State, where, by the Act of 1820 and other legislation, the *Law powers* of the Courts have been so much enlarged.

[4.] It is proper to notice the character and effect of the adverse possession relied on in this case, to protect the defendant against a recovery.

In 1816, a tract of land containing 7,000 acres, was granted, by the State, to William Wilder. In 1823, Wilder conveyed to Ebenezer Jenks; and in 1833, Jenks sold to Edwards, the plaintiff in ejectment. In 1838, Mr. Edwards being involved in litigation with Jenks or his real or pretended assignee, as to the payment of the purchase-money, which he had agreed to give for the land, probably considered it his interest, at that time, to make it appear that his vendor's title was defective. He took initiatory steps to run up the land in dispute as vacant, but waived his claim in favor of Wm. A. Smith—the latter refunding to him the money which he had expended in pro-

curing a warrant to issue, and causing a survey to be executed. With the knowledge of Edwards, and by his consent and approbation, Smith had the land granted to himself, and commenced, forthwith, exercising acts of ownership over it, by cutting timber, trees and ash-wood, which he continued to do from 1838, when the land was granted, to 1845, when it was pointed out by Edwards as Smith's property, and levied on and sold as such, Edwards being present. And this same kind of occupancy continued, with short interruptions, perhaps, down to 1852, when this suit was instituted.

Did these facts constitute adverse possession in Smith and those deriving title, by Sheriff's sale, through him, *as against Wm. H. Edward's?* They might not, perhaps, as to other persons; and would not, ordinarily, amount to such notorious, open and visible occupancy as would be sufficient to give notice to the true owner. And this is the meaning and object of the rule of law, as to the nature of that possession which will oust the true owner of his title. But this is a special case; for here the possession was not impliedly, but in fact, known to Edwards and with his consent, and with notice, that these acts of ownership were exercised by virtue of the independent title which Smith held to the land. We hold that it was good, under the circumstances, as to him.

And for Mr. Edwards to relieve himself, it is incumbent on him to make it satisfactorily appear that this conduct of his was not the result of prudential considerations, to avoid the payment of his debt to Jenks, much less of fraudulent motives, either as it respects Jenks or Smith, but the effect of ignorance, not of his title—that will not excuse him—but of the fact that this parcel of land was embraced in his deed from Jenks. This done, and he having relieved himself from the imputation of that gross negligence, in ascertaining the fact which, in contemplation of law, is equivalent to fraud, and having offered to make adequate redress to Smith, or those claiming under him, for the expense which they have incurred, by reason of his *laches* or misconduct, and he may, *perhaps*, be relieved from the dilemma in which he has involved himself.

[5.] Before concluding this opinion, it may be well enough to advert to that portion of the charge of the Court which declares that land cannot be twice granted by the State. If our learned brother intended to say, as we doubt not he did, that the .same land could not be twice *rightfully* granted by the State; that having parted, by grant, with all of her interest in and to a certain portion of her territory, there was nothing left in her to grant a second time—no one could doubt the correctness of the abstract proposition. The declaration, however, was not correct, as applicable to the case before the Court. For, practically, it is true that the same land may be twice granted; and the second grant made available as a muniment of title for many purposes. It may be asserted with equal truthfulness, that the same land cannot be twice deeded by an individual, yet how often is this done, and the junior conveyance prevail against the elder. It is a common practice with our people who own a large body of land composed of various parcels—the title to a portion of which it may be difficult, if not impossible, to trace—to cause a survey to be made of the whole, under a Head Right or some other warrant for that purpose, and to take out a grant for the whole; seven year's possession under which, would make it available for all purposes, of either attack or defence—so in this case. The land in dispute was granted originally to Wilder—Mr. Edwards, when he becomes the purchaser, permits Mr. Smith to survey and re-grant a portion of the land, which he claims to have occupied, peaceably and continuously, for seven years under his younger grant. If the proof be so, his title is perfected. But to make the case stronger, suppose Mr. Edwards had relinquished by deed to Smith: would not this have consummated Smith's title under the second grant; and might he not, in all coming time, and for all possible purposes, have rested on this second grant as the foundation of his title?

In this and divers other views then, land may be twice granted. And it is claimed by the defendant that the acts of Mr. Edwards, done and omitted in relation to this land, are

tantamount to a release—that they at least amount to an estoppel *in pais.*

We would add, that in the judgment of this Court, the Court below was right in maintaining that the deed from Jenks to Edwards, was not obnoxious to the Act of *Henry VIIIth* against purchasing pretended titles. It was made five years before the land was granted to Smith, or possession taken under that grant.

Finally, we affirm the ruling of our brother in rejecting the Sheriff's deed *as title,* without the production of the *fi. fa.* The officer's authority to sell must be produced or accounted for, in which event secondary evidence would be allowed.

Judgment reversed.