HAMMOND & HINSON *vs.* CROSBY & COMPANY.

1. A sheriff's deed, though unaccompanied by the judgment or execution, is good color of title as a starting point for the statute of limitations to run, if possession be taken under it.

2. A quit claim deed is good as color of title, and with possession may ripen into a perfect title. The fact that it is a quit claim deed does not of itself negative the presumption of good faith in one who holds under it.

3. One who relies on title by prescription and seeks to tack to his own the possession of prior holders to make out the prescription, must show that their possession was *bona fide.*

4. When a person is shown to be notoriously in possession of land by occupancy, cultivation and the like, his possession is presumed to be adverse until the contrary is shown, and such possession, when under written title, extends to the boundary of the tract described in the deed.

5. Where one sets up a prescription with adverse possession, and the opposite party replies by alleging fraud, the proof to avail must show fraud extending to the party so pleading the prescription.

6. The verdict was sustained by the evidence.

Title. Prescription. Deeds. Before Judge SIMMONS. Appling Superior Court. October Term, 1881.

Reported in the decision.

ROBERTS & DELACY, by HARRISON & PEEPLES, for plaintiffs in error.

G. J. HOLTON & SON, by JACKSON & KING, for defendants.

SPEER, Justice.

Crosby & Co. brought their action of trespass against the plaintiffs in error to recover damages alleged to have been committed by them by boxing the pine timber growing on lot 268 in the 2d district of Appling county, said boxing being done for turpentine purposes. To this suit

defendants pleaded the general issue. The case came on for trial, and under the evidence and charge of the court, the jury returned a verdict for plaintiffs. Defendants moved for a new trial, which was refused, and they excepted.

Plaintiffs below introduced in evidence a deed made by Gardner Wiley, sheriff, to G. J. Holton, to the lot in dispute as color of title, duly attested, and dated June 17th, 1872, recorded November 26th, 1880. Second, a deed from Holton without warranty (except against the maker) to Henry Mims, dated February 22d, 1873, recorded November 26th, 1880. A quit claim deed from Henry Mims to Silas A. Crosby dated February 17th 1880, recorded November 26th, 1880. A deed from S. A. Crosby to S. A. Crosby & Co. (plaintiffs), dated May 3d, 1880, recorded November 25, 1880, the said deeds embracing the land in dispute.

Defendants offered a written evidence of title as follows:

Plat and grant from state of Georgia to lot in dispute to William A. Gurley, dated June 9th, 1842. Letters of administration on estate of Wm. A. Gurley to Thos. G. Lawson, dated February 7th, 1871. Certified copy of order of court of ordinary for sale of wild and cultivated lands of the county of Appling, embracing lot in dispute. A deed from Lawson, administrator of Gurley, to L. F. Hinson and John Hammond, dated August 27th, 1880, recorded November 9th, 1880.

Under the admission in evidence of these title deeds, and the parol evidence submitted, the jury, under the charge of the court, returned a verdict for the plaintiff.

The defendants made a motion for a new trial, which was refused, and they excepted.

This action for trespass upon this lot of land brought by the plaintiffs below, rests upon a title they claimed to have made out by prescription, to-wit: Seven years adverse possession held *bona fide* under a claim of right.

The defendants rely upon a regular chain of title from the grant down regularly executed to the defendants alleged to be trespassers, and the rights of the respective parties are to be determined by the answer to the question, which of them exhibited the better title.

Plaintiffs below claim as the origin of their title to the lot and as color of title, a sheriff's deed made to Bolton, dated June 17th, 1872, and possession thereunder up to November, 1880, when it is alleged the trespass was committed. Holton, without warranty (except as against the maker), on February 22d, 1873, conveyed to Mims. Mims by quit claim conveyed, on February 17th, 1880, to S. A. Crosby, and he by deed May 13th, 1880, conveyed to plaintiffs below ;—all of these deeds embraced the lot in dispute. The land it is claimed was sold as the property of Hayes, and at the date of the sheriff's deed Holton, the purchaser, was put in possession ; and the tenant then in possession attorned to him. Holton sold land to Mims and put him in possession, declined to make Mims a general warranty deed for the sole reason that he had not held the lot for seven years under his purchase at sheriff's sale. Mims under his purchase went into possession, and continued therein till his sale to S. A. Crosby. During the time he held it planted every year six acres—all of the open land on the lot. Houses on the place were sometimes vacant, sometimes occupied by his tenants. Had some doubts about his title, but thought it good. He did not communicate to Crosby his doubts about the title. Crosby went in under his purchase from Mims, and has held it ever since. Plaintiffs proved by another witness he had passed over the land two or three times a year for the past seven or eight years and saw a small field of oats growing on it. Improvements consisted of two or three log houses and about six acres cleared on it.

Hinson, sworn for defendant, testified, while Mims was in possession of lot, heard him say he had no faith in his title. No one had been in possession for twelve

months previous to the purchase of same by Hinson and Hammond, on 27th of August, 1880. In the fall of 1879, Mims had sowed the open land on the lot in oats, and did so every fall while claiming the land.

James Johnson swore in May, 1880, he went to Mims to buy the land and offered to give him the value of it if he would make him a warranty deed. Mims refused, and said he did not consider his title worth a d—n.

Such, in substance, is the parol evidence on the trial.

A sheriff's deed with possession under it unaccompanied with the judgment or execution is good color of title as a starting point for the statute of limitations. 22d *Ga.*, 56; 9 *Ib.*, 440. It is also true, that possession resting on a quit claim deed, when *bona fide* made on the one side and *bona fide* received on the other, may unquestionably ripen into a title deed and defeat the negligent owner of a better title. 50 *Ga.*, 629; 58 *Ib.*, 386. We also recognize the rule that where one relies on his title by prescription he cannot tack to his own possession the possession of prior holders to make out his prescription, unless he shows the character of that possession as to its good faith, etc., and that he holds under parties so having *bona fide* acquired possession. 44 *Ga.*, 297.

The evidence in the record makes no attack upon the *bona fides* of Holton's title, and possession from the sheriff, dated in June, 1872. He not only bought but went at once into possession and so continued until he sold to Mims. Mims followed Holton by purchase and held, occupied and cultivated under a claim of right till he sold to Crosby, on the 17th of February, 1880. The attack is directed to the *bona fides* of Mims' possession and claim of right.

Tacking Mims' possession to that of Holton, from June 1872, to 17th of February, 1880, if the same was adverse and *bona fide* under a claim of right, then the prescriptive title in Mims was complete, and Crosby, who was an innocent purchaser from him without notice, stood pro-

tected, not only in his title, but also in his possession. It is true, the law allows prescriptive title by tacking to ripen under a quit claim title when the character of the possession of those under whom he claims is shown to be in good faith. A mere quit claim title will not of itself negative the presumption of good faith in those holding under it. 50 *Ga.*, 629. And in the absence of evidence to the contrary, the presumption is that the party claiming possession under it does so in good faith. So, it has been held a quit claim title taken in good faith is sufficient color of title upon which to base title by prescription, when accompanied by seven years' possession. 58 *Ga.*, 396. Though Mims, therefore, may have held under Holton by a quit claim title alone, still if he entered in good faith under this title (and so the jury found) and held exclusive adverse possession for the space of seven years, his prescriptive title ripened as against a better title in one negligent in asserting it.

When one is shown to be notoriously in possession by occupancy, cultivation, and the like, his possession is presumed to be adverse until the contrary is shown, and such possession when under written title extends to the boundary of the tract in the deed. 64 *Ga.*, 156; 65 *Ib.*, 402. And where one sets up this prescription and the adverse party replies by alleging fraud, the plea to avail must be shown by proof to extend to the party so pleading the prescription. 4 *Ga.*, 308.

Applying these principles of law to the facts of the case, we think the verdict was sustained by the law and the evidence, and we see nothing in the refusals to charge or the charge as given, as excepted to by the plaintiffs in error, that calls for a new trial.

Judgment affirmed.