BLUE RIDGE APARTMENT COMPANY INC. *v.* TELFAIR STOCKTON & COMPANY INC. *et al.*

No. 16643.   JULY 13, 1949.

554

*Poole, Pearce & Hall, Margaret Hills, James A. Branch,* and *Thomas B. Branch Jr.,* for plaintiff.

*T. M. Smith, MacDougald, Troutman, Sams & Branch, Grant, Wiggins, Grizzard & Smith, William G. Grant, Herbert Johnson, Tye, Thomson & Tye, John S. Bell,* for defendants.

*Charles D. Hurt, J. Corbett Peek Jr., Bryan, Carter & Ansley, W. J. Parker Jr., Clarke & Anderson, McLennan & Cook, G. S. Peck, Walter McElreath, Mitchell & Mitchell, Erwin, Nix & Birchmore, Johnson & Johnson, J. Mack Barnes, J. Glenn Giles, Albert Fendig, Bright & McLamb, Harvey L. Jay, C. A. Christian, O. B. McElvey, Hardin & McCamy, Dawson Kea, R. F. Chance, G. Clarence Thompson, Julius McCurdy,* and *J. B. Baum,* for persons at interest, not parties to record.

HEAD, Justice. Counsel for the plaintiff in error (plaintiff in the court below, hereafter referred to as the plaintiff) in their original brief filed in this court state that there are two questions for decision: (1) Does the plaintiff's petition set forth a cause of action for the recovery of the plaintiff's property and accounting for rents? (2) Did the plaintiff lose its rights by virtue of the recording statutes? It is then stated: "The question of determining whether plaintiff's petition sets out a cause of action depends squarely on the question of the validity of the

sheriff's sale following the levy of the fi. fa. in favor of The Mortgage-Bond Company of New York. If the sale was valid and regular then plaintiff's petition does not set out a cause of action. If the same was invalid then plaintiff's petition does set out a cause of action."

In the first instance the plaintiff's case rests upon its contention that the "indenture and bill of sale" between The Mortgage-Bond Company and The Mortbon Corporation was in effect a deed, and passed the legal title of the assets of The Mortgage-Bond Company to The Mortbon Corporation, so as to make the quitclaim deed for levy and sale by The Mortgage-Bond Company null and void.

In *Telfair Stockton & Co. Inc.* v. *Trust Co. of Ga.*, supra, with reference to the right of Telfair Stockton, as successor to The Mortbon Corporation, to be subrogated to the latter company, it was held that "the conveying clause of the assignment is followed by conditions or limitations, which neither the assignment nor the pleadings show were ever completed or effectuated so as to make any consideration or constitute any assignment, either legal or equitable, from The Mortgage-Bond Company to The Mortbon Corporation." . The effect of the above ruling was to hold that the "indenture and bill of sale" was never effectuated, never became operative, and that under the "indenture and bill of sale" the foreclosure proceedings were for the benefit of The Mortgage-Bond Company. With reference to the cross-actions of the defendants in that case it was ruled as follows: "The cross-actions of the defendants, based on the theory that the original sale of the property was void, are without merit, no assignment either in law or in equity being shown by The Mortgage-Bond Company to The Mortbon Corporation."

In view of the previous ruling in *Telfair Stockton & Co. Inc.* v. *Trust Co. of Ga.*, supra, the question is presented as to whether or not the petition of the plaintiff in the present case, after amendment, was sufficient to state a cause of action.

"An executory contract is one in which something remains to be done by one or more parties." Code, § 20-102. Clearly the contract between The Mortgage-Bond Company and The Mortbon Corporation, termed "indenture and bill of sale," is an executory contract. The contract does not stipulate a monetary con-

sideration, but states that it is "pursuant to the plan for reorganization, etc." At the outset it therefore appears that a way had been proposed to carry out a design, the reorganization of certain obligations of The Mortgage-Bond Company.

Subsequent to the conveying clause is a paragraph which recites: "Subject, however, to the results of the operations of said business after May 31, 1935 and to the liabilities of the Company [Mortgage-Bond] shown on its balance sheet of May 31, 1935, . . except the liability of the Company for principal and interest of its bonds (which is to be discharged by consummation of said plan for reorganization)." In this paragraph, and by the language contained in parentheses, it appears that the reorganization had not been consummated, for it is clearly stated that the liability of the Company for principal and interest of its bonds *"is to be discharged by consummation of the said plan for reorganization."* The word "subject" means, "being under the contingency of; dependent upon or exposed to (some contingent action)." Webster's International Dictionary, 2d ed. p. 2509. The word "however," between the word "subject" and the word "to," merely accents the contingency in this contract, which is subject to ratification and a conveyance of assets, upon the consummation of reorganization.

Conditions of a contract are either precedent or subsequent. Code, § 20-110. "A condition precedent requires performance before the estate vests." *Winn* v. *Tabernacle Infirmary*, 135 *Ga.* 380, 383 (69 S. E. 557, 32 L. R. A. (N. S.) 512). The words, "Subject, however, to," created a condition precedent. It so appears from the contract itself, for it is provided in the next paragraph: "and the Company [Mortgage-Bond] does hereby covenant and agree that it will make and duly execute and deliver all such other and further instruments of transfer or conveyance as may be requested by Mortbon by way of further assurance or more particular description." This latter provision contemplates that the contract is subject to ratification by specific conveyance, and that the proposal to sell by The Mortgage-Bond Company, subject to a contingency (the operations of The Mortgage-Bond Company and the reorganization of certain of its obligations), may be consummated in the future.

"A contract may be either entire or severable. In the former,

the whole contract stands or falls together. In the latter, the failure of a distinct part does not void the remainder." Code, § 20-112. The "indenture and bill of sale" between The Mortgage-Bond Company and The Mortbon Corporation was to effectuate but one purpose, a transfer of assets, and the transfer was to be consummated in the future, upon the happening of a contingency. The parties entered into an executory contract, wherein it was contemplated that upon reorganization The Mortgage-Bond Company would convey its assets to The Mortbon Corporation. The contract contained a condition precedent, and was entire.

Under the rule that the plaintiff's petition will be construed most strongly against it on general demurrer, did the plaintiff's amendment, which in general terms alleged that there had been a compliance with the conditions of the contract, state a cause of action? The writer, speaking for himself alone, is inclined to the position that, in the absence of allegations that all conditions were complied with and the sale effectuated prior to the execution of the quitclaim deed, the petition would fail to state a cause of action. However, since the views of members of the court are divergent on some phases of this issue, and it is not essential to a decision in the case that this question be decided, we will reserve any ruling as to whether or not the allegations of the amendment are sufficient to meet the rulings made in the former case *(Telfair Stockton & Co. Inc.* v. *Trust Co. of Ga.,* supra), as to the conditions and limitations of the contract.

■ The validity of the sale made by the sheriff under the quitclaim deed is controlled by the contract or "indenture and bill of sale" between The Mortgage-Bond Company and The Mortbon Corporation. Counsel for the plaintiff contend that the contract was in effect a deed and conveyed title to Mortbon. No particular form is required to convey lands in this State. Code, § 29-104. In order that a deed may be properly entered of record it must be executed in the presence of at least two witnesses, but as between the parties it is binding without witnesses. *Adams* v. *Barrett,* 5 *Ga.* 404, 415; *Howard* v. *Russell,* 104 *Ga.* 232 (30 S. E. 802). The fact that the venue of the contract is not shown, and that it was executed on behalf of each corporation, would not affect its validity as a deed as between the parties.

The contention of counsel for the plaintiff that the contract is a deed rests mainly on the conveying clause, as follows: "The Company [Mortgage-Bond] does hereby bargain and sell, grant, convey, assign, transfer, set over and deliver unto Mortbon all the assets, tangible and intangible, property, real, personal and mixed, business and good will of the Company (except its corporate franchise and name) and all its books and records." Is this clause, without any description of the property purported to be conveyed, sufficient to operate as a deed to real property in this State?

There are decisions from other jurisdictions tending to support the contentions of counsel for the plaintiff that a deed describing the subject matter as "all" of the grantor's property, or "all" of his property in a certain locality, is not void for want of sufficient description. Some of these decisions are cited in *Bennett* v. *Green,* 156 *Ga.* 572, 576 (119 S. E. 620), which will be discussed later in this opinion. For other citations see: 16 Am. Jur. 591, § 272 and 55 A. L. R. 163. A number of the cases from other jurisdictions have been examined and the writer has been unable to find any case in point on its facts with the present case. Regardless, however, of what the rule may be in other jurisdictions, this court has ruled many times as to what constitutes a sufficient description in a deed, and we are bound to follow our own decisions.

In *Andrews* v. *Murphy,* 12 *Ga.* 431, it was held: "The description of the property conveyed in a deed, is sufficiently certain when it shows the intention of the grantor, as to what property is conveyed, and makes its identification practicable." And at page 433 it was held: "It is necessary that there be in all valid deeds, a description of the thing conveyed, and there must be such certainty in the description, as clearly shows what the grantor intended to convey, and as will render it practicable to identify the premises."

In *Huntress* v. *Portwood,* 116 *Ga.* 356 (42 S. E. 513), it was held: "Where it can be gathered from the words employed in a deed that the intention of the grantor was to convey the whole of a tract of land owned by him, even a vague description of the same will suffice if, by the aid of competent parol evidence, its precise location is capable of ascertainment and its identity can thus be established."

In *Luttrell* v. *Whitehead,* 121 *Ga.* 699 (49 S. E. 691), it was held: "The description of the land in a deed must be sufficiently certain to afford means of identification. A deed purporting to convey land which is so indefinite in description that the land is incapable of being located is inoperative either as a conveyance of title, or as color of title." In the body of the opinion at page 700 it was held: "A deed which fails to describe any particular land or to furnish any key to the confines of the land purporting to be conveyed is void."

In *Crawford* v. *Verner,* 122 *Ga.* 814 (50 S. E. 958), it was held: "A deed wherein the description of the property sought to be conveyed is so vague and indefinite as to afford no means of identifying any particular tract of land is inoperative either as a conveyance of title or as color of title." In the *Crawford* case, after stating the rule in *Huntress* v. *Portwood,* supra, the court added (at page 816): "but if the description is so indefinite that no particular tract of land is pointed out by the instrument itself, the description must be held so defective as to prevent the instrument from operating as a conveyance of title."

In *Allen* v. *Smith,* 169 *Ga.* 395 (150 S. E. 584), it was held: "The description of the land in a deed must be sufficiently certain to effect means of identification. A deed lacking in such certainty of description, standing alone, is inoperative either as a conveyance of title or as color of title." See also: *Glover* v. *Newsome,* 132 *Ga.* 797 (65 S. E. 64); *Swint* v. *Swint,* 147 *Ga.* 467 (2) (94 S. E. 571); *Rumble* v. *Strange,* 154 *Ga.* 518 (114 S. E. 881); *Durham* v. *Davison,* 156 *Ga.* 49, 52 (118 S. E. 736); *Patrick* v. *Sheppard,* 182 *Ga.* 791 (187 S. E. 379); *Laurens County Board of Education* v. *Stanley,* 187 *Ga.* 390 (200 S. E. 294); *Holt* v. *Tate,* 193 *Ga.* 256 (4) (18 S. E. 2d, 12); *Gould* v. *Gould,* 194 *Ga.* 135 (21 S. E. 2d, 64); *Mull* v. *Allen,* 202 *Ga.* 176 (42 S. E. 2d, 360).

Under the rule stated in the foregoing decisions, a valid deed to lands must either describe the property conveyed, or the deed must furnish a key whereby the description may be made certain. In the present case we have an instrument between two foreign corporations, which does not indicate in what State, county, city, town, district, or land lots the property purported to be conveyed may be located, nor is there anything in the in-

strument which might be said to indicate that it was the intention of the parties that any property in this State was intended to be conveyed.

The decisions cited by counsel for the plaintiff contain language which, if considered independently of the facts in the case, would seem to support the contention that language similar to that used in the conveying clause in the present case is a sufficient description. The first case cited is *Bennett* v. *Green*, supra, which contains the following language: "General descriptions, such as 'all the estate, both real and personal, of the grantor,' 'all my land in a certain town, county, and State,' and 'all my land, wherever situated,' have been held good and sufficient." The facts were as follows: The Chatham Manufacturing Company made a deed to secure debt to the Peoples' Bank. "This deed conveyed a certain lease from the Savannah & Atlanta Railway Co. to the manufacturing company . . embracing certain described premises. After fully describing the premises embraced in said lease, and following a semicolon, there is in said deed this provision: *'including also all the machinery, equipment, stock in trade and all other assets of the said Chatham Manufacturing Company.'*" (Italics ours.) It was held that such description of personal property "was sufficient to impart notice to others of the title thereby conveyed," and was "not void for lack of description." In the *Bennett* case the security deed was properly executed and recorded, and it was held that it would "defeat the alleged liens" for labor if their creation was subsequent to the deed, "or if such deed was taken bona fide and without notice of such liens." *Bennett* v. *Green*, supra, dealing solely with personal property, is not in point on its facts with the present case, and does not support the contention that the description in the contract in the present case is sufficient to convey the title to lands in this State.

The next case cited and relied upon by counsel for the plaintiff is that of *Harriss* v. *Howard*, 126 *Ga.* 325 (55 S. E. 59). The *Harriss* case involved the language contained in the will of a testator: "I give and bequeath to my two sons . . all of my lands and appurtenances thereto belonging." In the *Harriss* case the court stated: "We recognize, of course, the difference between a will and a deed, and the great liberality allowed in mak-

ing wills and passing title by them." Neither the *Harriss* case, nor any decision of this court cited therein, supports the plaintiff's contention in the present case.

The case of *Townsend* v. *Tattnall Bank*, 74 *Ga. App.* 257 (39 S. E. 2d, 536), holds that the description of certain personal property is sufficient under the ruling in *Bennett* v. *Green*, supra. The ruling in *Flannery* v. *Hightower*, 97 *Ga.* 593 (5) (25 S. E. 371), to the effect that, "A devise of 'all of one's estate' or of a certain 'plantation,' described as being in a given county, is not void for uncertainty," does not support the contentions made in this case. In both the will and the deed in the *Flannery* case a key was furnished whereby the general descriptive terms could be made certain by "extrinsic evidence."

Counsel for the plaintiff assert in their brief that the sufficiency of the description in the present case "is determined beyond possibility of doubt in the case of *Hightower* v. *Blakely*, 163 *Ga.* 776, 777." In the *Hightower* case a deed was made to the plaintiff, which was duly executed and recorded. Several named tracts of land were described and following such description were the words, "also any and all other lots owned by me anywhere not herein enumerated." The evidence showed that the plaintiff had been in possession of the land in dispute, and he introduced in evidence an unrecorded deed to his grantor (which was shown to have been in the possession of such grantor) in which the lands in dispute were accurately described. It was held that, "the deed to the plaintiff and his cotenant, *considered in connection with the unrecorded deed to their grantor*, was sufficiently definite in the matter of the description of the property to constitute a valid conveyance of whatever title the grantor had in the land." (Italics ours.) The facts in the *Hightower* case are different from those in the present case. In the *Hightower* case a valid deed, duly executed and recorded, definitely described several tracts of land. Following the description was the clause, "also any and all other lots owned by me, etc." Under their duly recorded deeds the plaintiff and his cotenant had been in possession of the land for approximately eighteen years, and their grantor had been in possession prior thereto. "Considered in connection with the unrecorded deed of their grantor," which accurately described the lands, and was in evidence, the clause, "also

any and all other lots owned by me, etc.," was held to be sufficient to convey whatever title the grantor might have had.

In the present case the contract or "indenture and bill of sale" does not purport to describe any lands anywhere, either by hemisphere, nation, State, or otherwise. The Mortgage-Bond Company held the legal title to the lands now in dispute under a deed to secure a debt. The assignment, contract, or "indenture and bill of sale," does not mention deeds to secure debt nor lands held as security for debt.

In *Henry* v. *McAllister*, 93 *Ga.* 668 (20 S. E. 66), it was held: "While the transfer of negotiable promissory notes secured by an absolute conveyance of land under . . the Code, although the transfer be made by indorsement of the payee without recourse upon him, will not discharge the land from the incumbrance placed upon it by the deed, yet a mere written transfer, indorsed upon the deed, of the deed itself and the rights of the grantee therein (the payee of the note) will not pass title to the land out of him and into the indorsee of the notes, so as to enable the latter to convey the land back to the debtor who executed the deed to secure the notes."

In *McCook* v. *Kennedy*, 146 *Ga.* 94, 95 (90 S. E. 713), this court quoted with approval from *Tillman* v. *Bomar*, 134 *Ga.* 660 (68 S. E. 504), as follows: "Where a grantee in a deed made an endorsement thereon, headed with the name of the county and State and, continuing, 'I [naming such grantee], of the county and State aforesaid, for value received do hereby transfer the within and foregoing deed to [naming a firm] of the same place,' dated, signed, and attested like a deed, and recorded, this was not sufficient of itself to convey the legal title from the transferer to the transferees."

In *Carter* v. *Johnson*, 156 *Ga.* 207, 211 (119 S. E. 22), it was held: "where the security is a deed conveying the legal title, the transfer [of notes] carries with it an equitable interest in the security, though not the legal title; and a court of equity will give effect to the transferee's rights in the premises."

Under the authorities cited the "indenture and bill of sale" was insufficient to convey either title in fee or the legal title held under a deed to secure debt. This construction is supported by

the acts and conduct of both The Mortgage-Bond Company and Mortbon.

In *Huie* v. *McDaniel*, 105 *Ga.* 319 (31 S. E. 189), it was held: "The cardinal rule of construction of deeds, as well as other contracts, is to ascertain the intention of the parties. If that intention be clear from the deed and circumstances of the transaction and contravenes no rule of law, it should be enforced, notwithstanding there might be mere literal repugnancies in different clauses of the conveyances."

In the present case The Mortgage-Bond Company executed the quitclaim deed for the purpose of levy and sale after it had entered into the contract or ·"indenture and bill of sale" with Mortbon. Mortbon acquiesced in the quitclaim deed for levy and sale and in the sheriff's sale thereafter. This conduct on the part of the parties to the "indenture and bill of sale" can mean but one thing. They construed the "indenture and bill of sale" as not passing the legal title to lands held by The Mortgage-Bond Company as security for debt, and that only The Mortgage-Bond Company could convey the legal title for the purpose of levy and sale. The equitable rights of the parties, as between The Mortgage-Bond Company and The Mortbon Corporation, whatever they may have been, did not affect the legal title held by The Mortgage-Bond Company. The plaintiff's contention, that the "indenture and bill of sale" between The Mortgage-Bond Company and The Mortbon Corporation passed the legal title to lands held by The Mortgage-Bond Company under a deed to secure debt, can not be sustained under prior decisions of this court. The plaintiff's petition for this reason failed to state a cause of action.

■ The contention of the plaintiff that it is entitled to have an accounting for rents and profits under its agreement with The Mortgage-Bond Company, and that it is entitled to recover the property, is based upon the Code, § 67-115, as follows: "If the possession of the property shall be given to the mortgagee, the mortgagor may redeem at any time within 10 years from the last recognition by the mortgagee of such right of redemption." The plaintiff's original petition alleges: "While said case [suit by The Mortgage-Bond Company on the notes of the plaintiff] . . was pending and before judgment, the Mortgage-Bond Company

of New York, States Realty Company Inc., and petitioner consented and agreed for the Mortgage-Bond Company . . to enter into possession of said property under the rights that it had and to collect the rents and income from said property and to apply said rents and income on said debts of The Mortgage-Bond Company of New York, *pending the outcome of said case.*" (Italics ours.) By amendment it was alleged that this agreement was made on August 13, 1935 (the same date the suit was filed). The unrecorded "indenture and bill of sale" between The Mortgage-Bond Company and The Mortbon Corporation was entered into on October 21, 1935. With reference to possession by The Mortbon Corporation it is alleged: "The Mortbon Corporation of New York and its agents or creatures, Joseph A. West and Southwall Corporation, have not acquired and did not acquire any prescriptive title by virtue of adverse possession under color of title of said void sheriff's deed because prior to the time of said sale said Mortbon Corporation of New York was entitled to and by consent of States Realty Company Inc. and petitioner, was actually in possession of said property under the authority of the security deeds described hereinabove." Under the allegations of the petition the possession of the property by The Mortgage-Bond Company, as grantee in the security deed, was acquired between August 13, 1935, and the date of the sale by the sheriff in February, 1936. Likewise it is alleged that The Mortbon Corporation was in possession "prior to the time of said sale."

Clearly, by the act of having the property sold under execution, neither The Mortgage-Bond Company nor The Mortbon Corporation recognized any right of redemption in the plaintiff under the alleged agreement to apply rents and income to the plaintiff's debt. No new agreement, promise, or recognition of the plaintiff's right to redeem is alleged to have been made by either corporation after the date of the sale by the sheriff. While no copy of the instrument held by The Mortgage-Bond Company is attached to the petition, the plaintiff alleges that it was a security deed. Should the plaintiff be in error as to the nature of the instrument (notwithstanding that it is bound by the allegations of its petition), and should the instrument be a mortgage. and not a security deed, the plaintiff could not recover. In *Horton* v. *Murden,* 117 *Ga.* 73 (5) (43 S. E. 786), it was held:

"Under the Civil Code, § 2734 [now § 67-115], a mortgage will ripen into title if the mortgagee remains in possession for ten years without recognition of any right in the mortgagor to redeem. After such possession the law will presume a sale of the equity of redemption, either under foreclosure proceedings or by the act of the parties."

In the present case the plaintiff alleges that The Mortbon Corporation "was actually in possession of said property under the authority of the security deeds described hereinabove," and that The Mortbon Corporation, Joseph A. West and the Southwall Corporation did not acquire "any prescriptive title by virtue of adverse possession under color of title of said void sheriff's deed." This contention is unsound and without merit. In order to show that the sheriff's sale is void the plaintiff relies solely on the contention that the quitclaim deed for the purpose of levy and sale by The Mortgage-Bond Company was made after it had parted with the legal title to the property. We have rejected the contention that the "indenture and bill of sale" passed the title from The Mortgage-Bond Company to The Mortbon Corporation, in division one of this opinion. Had we sustained this contention, however, and if it had been held that the quitclaim deed for levy and sale was void, this would not defeat the deed made by the sheriff as color of title.

In *Beverly* v. *Burke,* 9 *Ga.* 440, 443 (2) (54 Am. D. 351), this court held: "What is meant by color of title? It may be defined to be a writing, upon its face professing to pass title, but which does not do it, either from a want of title in the person making it, or from the defective conveyance that is used—a title that is imperfect, but not so obviously so that it would be apparent to one not skilled in the law." Upon a reappearance of the above case in this court (14 *Ga.* 70, 72), it was held as follows: "It is the opinion of this court, that *there was no error in the admission of the deed from the Sheriff of Campbell County, to the tract of land lying in Fayette County.* An instrument such as this is alleged to be, is admitted, though defective, in aid of possession, because it is looked to as a sort of definition of the limits and extent of the claim by possession. *Such purpose it serves, though not perfect title, but only a sign, semblance, or*

*color of title.* In this point of view it was proper testimony in this case." (Italics ours.)

Certainly in the present case, not only would one not skilled in the law believe that title to the property passed by the sheriff's sale and deed, but also one skilled in the law could not escape the same conclusion. By the only instrument of record, The Mortgage-Bond Company held the legal title to the lands by deed to secure debt. By the record title a quitclaim deed from any other person or corporation for the purpose of levy and sale would have been clearly without authority. If a deed by a sheriff in one county to lands lying in another county is good as color of title, can it be said that a sale, valid and regular on its face, is not sufficient as color of title?

In *Burkhalter* v. *Edwards,* 16 *Ga.* 593, 596 (60 Am. D. 744), it was held: "Conceding that the sheriff sold without authority, and this is the most that can be presumed from the absence of the fi. fa., and that consequently, his conveyance was void; still, if the purchaser took and held possession under the deed, it was good as color of title."

In *Walls* v. *Smith,* 19 *Ga.* 8, 12, it was held: "Color of title is anything in writing, connected with the title, which thus serves to define the extent of the claim." In *Hester* v. *Coats,* 22 *Ga.* 56, it was held: "A sheriff's deed, and possession under it, unaccompanied with the judgment or execution, is good color of title, as a starting point for the statute of limitations." For cases to the same effect see: *Hammond & Hinson* v. *Crosby & Co.,* 68 *Ga.* 767; *Sweeney* v. *Sweeney,* 119 *Ga.* 76, 79. "Color of title is anything in writing purporting to convey title to the land, which defines the extent of the claim." *Veal* v. *Robinson,* 70 *Ga.* 809. In *Millen* v. *Stines,* 81 *Ga.* 655 (8 S. E. 315), this court held that possession of lands in good faith under a forged bond for title for seven years would give a good title by prescription. Decisions of this court might be multiplied to show that the conveyance by the sheriff in the present case was good, at least, as color of title. This is unnecessary in view of the authorities cited.

The sheriff's sale of the property in the present case was made in February, 1936. The plaintiff's petition was filed in May, 1946. More than ten years had elapsed. Adverse possession of lands under color of title for seven years shall give title by pre-

scription. Code, § 85-407. In *Beverly* v. *Burke,* supra, it was held: "Though the title of an adverse possession be ever so defective, yet the true owner must sue in seven years, or he is barred by his entry." See also *Baxter* v. *Phillips,* 150 *Ga.* 498, 503 (104 S. E. 196), and cases cited.

Sale of the property in the present case by the sheriff, in February, 1936, is utterly inconsistent with the plaintiff's contention that there was any recognition of its right to redeem, or that there was any agreement which could be said to extend beyond the sale. By its failure to sue within seven years, the plaintiff's claim is barred. Nor does a different rule apply because the plaintiff alleges that the entry of The Mortgage-Bond Company and The Mortbon Corporation was under and by virtue of a security deed. In *Benedict* v. *Gammon Theological Seminary,* 122 *Ga.* 412 (4) (50 S. E. 162), it was held: "The grantor in a security deed or borrower, has at least ten years in which to redeem the land, if the grantee is in possession; but if the grantee is in possession under a sheriff's deed made in pursuance of an illegal sale, such a deed, being color of title, may bar the grantor in seven years, if acquiesced in by him for that length of time."

A general demurrer admits only well pleaded facts, and does not admit conclusions of law. The plaintiff's conclusion that West and his successors in title did not acquire title by prescription is not supported by the facts and the law. A duly recorded deed is notice to everyone who may claim an interest in conflict with the deed. *Gardner* v. *Granniss,* 57 *Ga.* 557; *McElwaney* v. *MacDiarmid,* 131 *Ga.* 98 (3) (62 S. E. 20). The failure of the plaintiff to take any action to assert its interest, for a period of more than ten years after notice to it, by a duly recorded deed in direct conflict with the plaintiff's claim, bars the action.

■ The Code, § 29-401, provides: "Every deed conveying lands shall be recorded in the office of the clerk of the superior court of the county where the land lies. The record may be made at any time, but such deed loses its priority over a subsequent recorded deed from the same vendor, taken without notice of the existence of the first." Formerly this section contained the words, "within one year from the date of such deed. On failure to record within this time" (Code of 1882, § 2705), at the end of the first sentence and at the beginning of the next. The above sec-

tion was amended by the act of 1889, which is now Code, § 67-2501, as follows: "Deeds, mortgages and liens of all kinds, which are required by law to be recorded in the office of the clerk of the superior court, shall, as against the interests of third parties acting in good faith and without notice, who may have acquired a transfer or lien binding the same property, take effect only from the time they are filed for record in the clerk's office."

Under the Code sections quoted the plaintiff's case can not properly be construed as a contest between the "indenture and bill of sale" (by The Mortgage-Bond Company to The Mortbon Corporation) and the quitclaim deed by The Mortgage-Bond Company for the purpose of levy and sale. Under the allegations of the petition, after the execution of the "indenture and bill of sale" The Mortgage-Bond Company made a quitclaim deed for the purpose of levy and sale. The property was sold under execution by the sheriff to J. A. West. West sold to the Southwall Corporation, which in turn sold to Sims and Grant. Sims and Grant conveyed the property to the First Federal Savings & Loan Association of Atlanta for value by deed to secure debt. A perfect "paper title" is shown into the First Federal Savings & Loan Association. The "indenture and bill of sale" was not recorded, and had it been recorded, not being entitled to record, it would not give constructive notice of its contents. "The registry of a deed, not proved or acknowledged according to law is not constructive notice to a subsequent purchaser." *Herndon* v. *Kimball*, 7 *Ga.* 432 (50 Am. D. 406); *Coniff* v. *Hunnicutt*, 157 *Ga.* 823, 836 (122 S. E. 694). Sims and Grant were in possession of the property at the time they conveyed by deed to secure debt, and there is no fact or circumstance alleged in the petition which could be said to impute any notice, or put the defendant, First Federal Savings & Loan Association, on inquiry, as to the plaintiff's claims. Under the rules stated in *McDonald* v. *Dabney*, 161 *Ga.* 714 (8-c) (132 S. E. 547), *Archer* v. *Kelley*, 194 *Ga.* 117 (21 S. E. 2d, 51), and *McDonald* v. *Taylor*, 200 *Ga.* 445 (37 S. E. 2d, 336), the plaintiff can not recover from the First Federal Savings & Loan Association.

A different result is not authorized by the decisions cited by counsel for the plaintiff in their original brief. The ruling in *Daniel* v. *Hollingshead*, 16 *Ga.* 190 (4), as follows: "The doc-

trine, that a purchaser without notice, for a valuable considera-
tion, is entitled to the protection of the courts, applies where there
is prior equitable title only: but where there is prior legal title,
the rule is caveat emptor," was applied in that case where the
administrators of an estate recovered a judgment against the de-
fendant, and costs could not be collected from the defendant.
The officers of the court issued an execution against the admin-
istrators for costs. It was levied upon property of one of the
heirs, which he had received from the estate. The court held
that title was not divested by the sale, that the heir could re-
cover his property from the purchaser at the sheriff's sale, and
that the officers of the court were unauthorized to enter up exe-
cution against named persons as administrators, they having
elected "to treat this debt as their own." Obviously, a sale under
a void execution does not have the standing in law accorded deeds
of bargain and sale, duly recorded, without notice of an adverse
claim.

The rule in *Wells* v. *Walker*, 29 *Ga*. 450 (2), quoted in the
briefs of the plaintiff's counsel, was applied in a case involving
an original grant from the State. The *Wells* case involved sev-
eral questions, among others, as to whether or not a certain deed
was a forgery. An examination of the original record in the
*Wells* case (26 *Ga*. 390) clearly distinguishes it from the present
case on its facts.

The rule in *Compton* v. *Cassada*, 54 *Ga*. 74 (2), as follows:
"A purchaser in good faith from one who has no title, in ignor-
ance of the rights of the true owner, obtains no title," was not
applied in a case involving the recording statutes pertaining to
deeds. In the opinion the court stated: "If he [Cassada] saw
the letters from the defendant to Jones, as he says he did, that
was sufficient to put him upon notice that Jones, from whom he
purchased the land, had no title to it, and conveyed none to him;
that the title was in Compton, the defendant." In addition to
the fact that Cassada did not contend that he was relying upon
the recording statutes, he had actual notice (as pointed out in
the opinion) that title to the property was in Compton. The
facts shown by the record and the opinion in the *Compton* case
clearly distinguish it from the present case. The question for
decision in *Toole* v. *Toole*, 107 *Ga*. 472 (33 S. E. 686), involved

only the priority of purely voluntary deeds and the *Toole* case is not in point on the question now before the court.

The present case is controlled adversely to the contentions of the plaintiff by the recording statutes of this State, regardless of the classification applied to the conveyance made by The Mortgage-Bond Company for the purpose of levy and sale, or any technical meaning that might be applied to the word "vendor" in the Code, § 29-401. Under the allegations of the petition, The Mortgage-Bond Company held the legal title to the property by deed to secure debt, which was duly recorded. At the time The Mortgage-Bond Company executed the deed for the purpose of levy and sale the record title authorized the execution of such deed. The sheriff levied an execution in favor of The Mortgage-Bond Company on the property and it was duly advertised and sold. Conceding, but not deciding, that the allegations of the petition may be sufficient to show that the purchaser at the sheriff's sale had knowledge of the plaintiff's agreement with The Mortgage-Bond Company, and that subsequent purchasers by warranty deed had like knowledge, the petition does not, even by inference, show any notice to the First Federal Savings & Loan Association of any defect in the title, or of the plaintiff's claim. There is no fact alleged in the petition tending to show, by inference or otherwise, that the First Federal Savings & Loan Association did not act in the utmost good faith in making a loan on the property and in taking a deed to secure such debt. "A grantee in a security deed who acts in good faith stands in the attitude of a bona fide purchaser, and is entitled to the same protection." *Roop Grocery Co.* v. *Gentry*, 195 *Ga.* 736, 745 (25 S. E. 2d, 705). The petition shows no right of recovery against the First Federal Savings & Loan Association, and for this additional reason fails to state a cause of action for equitable relief.

*Judgment affirmed. Duckworth, Chief Justice, Wyatt, Head, and Hawkins, Justices, and Judges Perryman and Thomas concur. Atkinson, Presiding Justice, dissents.*